JeRRy G. Frye D-96501
S.Q. State Prison 4-EB-88
San Quentin, CA. 94974

**FILED**

**AUG - 8 2014**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

United States District Court
For the District of Columbia.

Case: 1:14-cv-01355
Assigned To : Unassigned
Assign. Date : 8/8/2014
Description: Pro Se Gen. Civil

**JURY DEMAND**

Jerry Grant Frye
          Plaintiff/Petitioner:

v.

State of California, et al.
          Defendants/Respondents:

Complaint for Damages for
Deprivations of Civil Rights by
Violations of the State's and
United States Constitutions and
Statutory Laws, and Conspiracy
to Violate Federal Civil Rights.
Under 42 U.S.C. §1983/1985.

**Parties:**

Plaintiff: Jerry G. Frye who makes this Complaint is and has been
an inhabitant of and within the Jurisdiction of the United States of America At
All Times herein alleged. Plaintiff is in Custody at San Quentin State Prison,
San Quentin, CA. 94974. Plaintiff is Under a Sentence of Death. Plaintiff bridges
continuously has been imprisoned under a sentence of death since September
12, 1988 , incident on which He sues, and therefore the Statute of Limitations
on His Claims has not yet began to run, and has been tolled pursuant to Cal. Code
of Civil Procedure.

**Defendants:**

The State of California is the Named Defendant as "All State Government Agents"
Act Under Color of Authority Vested by the Sovereignty contained within State of
California. This Case should be Served upon the following but not limited to:

Governor Edmund Jerry Brown
Office of Legal Affairs
State Capitol 1st. Floor
Sacramento, CA. 95814

California Attorney General
Kamala Harris
1300 I Street, suite 125
Sacramento, CA. 94244-2550

RECEIVED
Mail Room

**JUL 28 2014**

Angela D. Caesar, Clerk of Court

1.

## Jurisdiction:

Plaintiff is in custody in violation of the United States Constitution, Statutory Laws and Treaties of the United States. These issues are all related to a Capital Case in which Human Life hangs in the balance.

Further, All of the Petition's Named Defendants have acted pursuant to Color of Law and Authority Obtained by License <Legal Permit> and or Oath to Obtain Grant of Vested Power and Authority by the Sovereignty.

As a Matter of Law and Treaty, And the Constitutions of Both the United States and State of California. The State of California is deemed as a State within the Union of the United States. The State of California has Accepted by Constitution, Statutory Laws and Treaties, The United States is the Supreme Law of the Land with Original Jurisdiction.

The State of California by Vestment of Authority to it's Government Agents is Vested by Oath to ALL Duties incumbent by the Constitution, Statutory Laws and Treaties of the United States. The State of California bares the Legal Obligations to All liabilities created by State Government Agents Acting Under Color of Vested Authority and or with Authority of the State of California, or Employed by the State of California.

The Acts described herein raise issues of Acts of Treason Against the United States and it's Citizens. Therefore the District of Columbia the Capitol of the United States IS the proper Jurisdiction. Plaintiff has acted in Full Compliance to Legislative Demands of Title 18 U.S.C. §04: "To Report Crimes to a Judge, or Other Government Representative with Vested Authority". The failure to implement a Corrective Process, or create delays in corrective process, and or conceals, attempts to conceal establishes Violations of Title 18 U.S.C. §03, "Aiding and Abetting by failure to Act pursuant to Invoked Duty Owed to Vested Authority".

Defendant State of California, et. al. Governor J. Brown for the State Capitol is the Highest Legal Representative Acting in behalf of State of California.

2.

## STATEMENT OF CASE

I Jerry G. Frye, Petitioner was arrested in July, 1985 and charged
with 2 counts of murder, robbery, burglary and grand auto. Petitioner
contends an unlawful conviction was obtained by and through unqualified
counsel, and Prosecutor's Criminal actions of violations of laws. Before
and during trial. Petitioner was convicted on ALL counts and sentenced
to death on 9-12-1988. Petitioner was and is Innocent of all charges.

Petitioner was appointed counsel, a Public Defender named Larry Dixon,
he was actually trying to help me at first, Mr. Dixon was not qualified to
handle my case, in fact he had had one "1" trial before being appointed to
my case and Mr Dixon had lost that trial. Mr. Dixon told the Justice
Court Judge "Howard" he was not qualified to represent me, and he also
told the Superior Court Judge "Ryan" he was not qualified. Mr. Dixon asked
for qualified co-counsel to be appointed, Judge Ryan refused and then Mr.
Dixon tried to withdraw from my case, that was refused as well. Over a
year has went by and Petitioner was being forced to waive his rights for
a fast and speedy trial. During this time the Prosecutor, Mr. David Rich-
mond and his detectives were building their false case against Petitioner.
There was a lady with me a, Mrs. Jennifer Ann Warsing, the Prosecutor gave
Mrs. Warsing complete immunity to say and do whatever he asked of her to
secure a conviction on Petitioner. Mrs. Warsing was supposed to be an
Eye Wittness to this crime Petitioners being charged with. There was "NO"
corroborating evidence what so ever concerning the crime or crime scene in
any of Mrs. Warsing's stories that Petitioner had done this. No finger
Prints, no DNA, nothing. Dr. John Thorton, Professor of Criminology at
Berkeley stated at trial that, this could NOT have happened the way Mrs.
Warsing said it did in any of her stories. Also during this time nothing
was being done in my defense, evidence was being lost or destroyed. No
challenge of search warrants, arrest warrants, nor witness statements,
which drastically changed in their context from Police initial reports to
testimony at trial. Mr. Dixon finally helped me write a letter to the
Calif. Supreme Court complaining of the way I was being treated there in

Amador County, how all my rights were being violated. The Calif Supreme
Court fired Judge Howard and Judge Ryan from any further involvment in my
case, a new Judge came in and dismissed ALL charges against me. Approxi-
mately 14 months after I was arrested

I thought I would be released after my case was dismissed, Petitioner
still doesn't understand how the State could violate my rights so badly
to where I could never have a fair trial. They just pretended like the
first round never happened. I was arrested again, charged with the same
thing, plus at the second Prelim the Judge told the Prosecutor that he'd
better charge me with Grand Auto, that's when I picked up that charge.
Petitioner did receive one of Californias most unethical, corrupted lawyers
a Mr. Richard Hawk, at Layola Law School in L.A. Professor Lori Levenson
uses Mr. Hawk to teach her students what **not to do** in her ethics classes.
Mr. Hawk came to see Petitioner in the County Jail almost every day, left
hundreds of dollars on Petitioners account, Judge Ryan did not want to
appoint Mr. Hawk to my case, but, would not say "why". So Petitioner be-
lieved Mr Hawks lies, Hawk stated that the Judge knew he would help me
and would not allow them to convict me of these bogus charges, Mr Hawk
guaranteed Petitioner he would get him out of jail and his freedom back,
IF Petitioner would help him get appointed to my case, or I'd be stuck
with someone the Judge wanted to give me and I wouldn't have a chance of
a fair trial. "NO" one told me about Mr. Hawk, who he really was or his
record of lying to his clients to gain their trust. Solely for a paycheck.
Petitioner needed help very badly and Mr. Hawk seemed to be the only one
trying to help. So I went along with Mr. Hawks plan to get appointed to
my case, Mr. hawk said an old friend of his a Mr. Judd Iverson would come
to visit me at the County jail then I was to accept him as my lead attor-
ney, the Judge would appoint him, anyone but Hawk, once Mr. Iverson was
appointed Hawk would walk into the courtroom and Mr. Iverson would appoint
Mr. Hawk as second chair, it went perfect for them. Right from the first
day of the trial, Mr. Iverson asked Mr. Hawk for a copy of the motion to
suppress he was to have filed, Mr. Hawk stated that he had forgotten to do

4.

Jerry G. Frye
D-96501   4-EB-88
San Quentin State Prison
San Quentin, Ca. 94974
7-18-2014

it. Already helping the Prosecution to convict his client. The entire
trial was tainted by Mr. Hawks incompetency. Unknown by the Petitioner,
Mr. Hawk was facing a large judgement and suspension from the practice of
law, in fact Mr. Hawk was suspended during Petitioners trial, The Prose-
cutor wrote a letter to the Calif Supreme Court and got Mr. Hawks suspension
lifted pending Petitioners trial, this creating a very serious conflict of
interest.  See AOB-Table of Contents. Enclosed.  Neither Mr. Iverson nor
the trial Judge, Mr. William T. Lowe said nothing, they all knew and let
this go on at the cost of my life and freedom.  AOB Tables of Contents.--
Exhibit #1.  Also, the Prosecutors only witness, Mrs. Jennifer Ann Warsing,
was allowed to testify against Petitioner when the Judge, Prosecutor and
the Petitioners attorneys all knew Mrs. Warsing was giving false testimony
at trial, The trial Judge also erred in failing to administer the standard
instruction CalJIC 3.11.  Concerning the testimony of a witness, eyewitness
must be corroborated.  This was collusion by all of them against Petitioner.
Exhibit #1 also.

Petitioner was convicted and sentenced to death and sent to San Quen-
tins Death Row in mid Sept. 1988.  Petitioner was appointed appeals counsel
on Jan. 19, 1989, approximately 8 months after conviction, Mr. David A.
Lane, was appointed for both the Direct Appeal and Habeas Corpus, despite
rules and policies against dual appointments.  Petitioner was not given
appointment within 60 days, the time limit prescribed by law.  Petitioner
records were not corrected or certified within the 90 day appointment of
counsel, in fact, records corrections, certification, augmentation and
reconstruction continued for many years, with Mr. Lane stipulating to the
reconstruction of Petitioners records, files, evidence, warrants, testimony
by witnesses and all other issues, which demand compliance with due process
of law.  And Petitioners AOB was not filed until Jan. 10, 1996 (8 years
after sentencing) Mr. Lane accepted in agreement for retainer to follow
and support the Calif  Supreme Courts promulgated policies put in place in
1989.  This policy suspends and denies the filing of a Writ of Habeas
Corpus to challenge the validity of conviction, habeas for clemency only.

Hence no collateral challenge to the validity of the conviction, was filed or allowed to be filed, with the Calif. Supreme Court placing itself as first chair in the appeals process. Deciding what issues to raise, when to raise them, what investigation's are to be done and presented, and the entire direct appeal and habeas appellant review was directed by the Calif Supreme Court and completely based upon a reconstructed record with and by the stipulation of Attorney: David A. Lane, This policy as mentioned places the Calif. Supreme Court as first chair of ALL Capital Defense appeals, deciding what issues you can raise, and when, (causing defaults by design), investigations, if any, basically a rubber stamp of Mr. Lane's representation, delays after delays, with perfunctory issues and motions filed which by design were known before hand to fail.

After approximately 10 1/2 years, the Calif. Supreme Court sent Petitioner a one "1" page letter, "1" line saying denied on the merits. That's it. They rubber stamped my appeal without even looking at the issues. Mr. Lane filed a motion for discovery, the A.G. withheld evidence of "3" of Petitioners Jury members talking outside of the Jury. 2 to their Preachers and 1 to her husband.

Around the end of 1998 Petitioner was contacted by the Federal Defenders Office, the Eastern District of Calif. in Sacramento, Ca.. By Mr. George Couture and Mr. Dennis Cusick, This started off as business as always, except these attorneys were more interested in doing a family tree and issues that didn't have anything to do with Petitioners case. Mr. Couture sadly had to return to his home state of Florida and my case was turned over to a, Mr. Tivon Schardl, Fla. Bar 73061 and Mrs. Jennifer Mann SB no. 215737, It was over 10 years before I actually met or talked to attorney Mann, and another who's name is on my legal info is a Mr. Daniel Broderick, Bar 89424, I have never met nor talked to this attorney. I've been in this Federal Defenders office for over 15 years now, Petitioner has been having an evidentuary hearing for over 9 years, "they have"

Once again, years of perfunctory filings - submissions which are designed and known to fail. During this period, late 2009 to 2010,

Jerry G. Frye
D-96501   4-EB-88
San Quentin State Prison
San Quentin, Ca. 94974
7-18-2014


Petitioner became aware of numerous issues, policies, which affected
Petitioners state appeals process and federal habeas corpus issues in a
very negative and harmful way, causing irreparable damage and harm to
both past and present levels of the appellant review process.

Over the next few years, Petitioner informed and made aware of my
concerns by correspondence, legal notices, service upon attorneys of Pro.
se submissions, ALL my attorneys. But, to no avail, even when proving
beyond a reasonable doubt. Petitioner was in fact correct in all conten-
tions. Despite being informed and made aware of all above mentioned
issues by Petitioner pursuant to law, ALL FELL on Deaf Ears, Petitioner
addressed all letters, and complaints and motions to Mr. Tivon Schardl who
adamantly refused to add and include a single issue into Petitioners
habeas corpus issues to the District Court.

Due to these refusals, Petitioner filed a properly submitted motion
for consideration for "Conflict of Interest" in complaint of Mr. Schardl
and other Federal Attorneys on my case "Not" acting in Petitioners best
interest. The Eastern District Magistrate Judge Carolyn K. DeLaney
errored in hearing Petitioners motions and in her decision that, there was
no conflict of interest, when a very apparent and clear conflict exists
and remains. Petitioner did file a Decline to Proceed before a Magistrate
Judge, filed with conflict of interest motion and habeas corpus motions
on June 21, 2012   Mr Tivon Schardl took steps of his own with his Mag-
istrate Judge.

Petitioner has and continues to diligently seek redress, relief and
corrections and has filed the following submissions, Rule 60 (b), 42 USC §
1983-85, 28 USC § 2241, Conflict of Interest Motion, one submission 60 (b)
was refused filing by Magistrate Judge DeLaney, ALL others were denied/
dismissed, I error of Judgements, causing Petitioner to file - submit
appeals of judgements to the Ninth Circuit Court of Appeals.

Jerry G. Frye
D-96501   4-EB-88
San Quentin State Prison
San Quentin, Ca. 94974
7-18-2014

## Petitioners List of Filings / Submissions

1) Writ of Habeas Corpus; 28 USC § 2241 (a)(c)(3). Title 18 USC § 04.
   Case No. 2:12-CV-01720-DAD. Eastern District Court.

2) Conflict of Interest; Case No. 2:99-CV-0628-LKK-CKD  Eastern
   District Court.

3) Constitutional Question; 28 USC. § 2403 (b) Eastern District Court
   Case No. 2:12-CV-01720-DAD.

4) Decline to Proceed before Magistrate Judge, filed 6-21-2012 Eastern
   District Court

5) Motion of Joinder; Co-Plaintiff, Northern District Court. Case No.
   5:12-CV-00211 RMW.

6) Prisoners Civil Rights Complaint, § § 1983-85  Eastern District Court
   Case No. 1:12-CV-00077 LJO.

## Index to Exhibits

1) AOB, Table of Contents;

2) Mrs. Jennifer Ann Warsing;   Immunity Agreement.

## Statement of Case

Petitioner's appellant review was based upon reconstructed records,
stipulated to by Petitioners Counsel. No certified appeal record was
ever perfected by appellate counsel at any level of review. The delays
"for Decades" were created intentionally with intent and Specific Design,
to corrupt the trial records. This is why records corrections take so
long. ALL were participants in records and augmentations corrections by
total reconstruction

On this 18th day of July 2014                    Respectfully Submitted

at San Quentin State Prison

San Quentin, Ca   94974

This Complaint is based upon a Foundation of the Denial of Constitution-
ally Guaranteed Rights by Agents of the Government Acting Under Color of Law,
pursuant to Title 18 U.S.C. §241 and §242, and the Defendants Conspiracy and
(Agreements) to Willfully and Intentionally Violate Plaintiff's Constitution-
ally Guaranteed Rights, While Acting Under Color of Law, Vested Authority of
the Sovereignty by Oath of Vestment and License to Practice Law in California
and the United States. **Petitioner submits this Case presents Acts of Treason.**

## Legal Argument/Points and Authotities:

All Cases start with Arrest Warrants and Search Warrants pursuant to Cal.
Penal Code §1534(a): "Time Limits for execution and return".

> (a)    A Search Warrant shall be executed and returned within ten days
> after date of issuance. A warrant executed within the 10-day period
> shall be deemed to have been timely executed and no further showing
> of timeliness need be made. After the expiration of 10 days, the
> warrant, unless executed, is void. The documents and records of the
> Court relating to the warrant need not be open to the public until
> the execution and return of the warrant or the expiration of the 10
> day period after issuance. Thereafter, if the warrant has been ex-
> ecuted, the documents and records shall be open to the public as a
> judicial record".

Pursuant to Cal. Penal Code §1528: The Officer has to provide Both a Dec-
laration and Testimony Under Oath to obtain a Search Warrant.

Pursuant to Cal. Penal Code §813: The Officer has to provide a Declaration,
and Evidence to establish probable cause for the Issuance of an Arrest Warrant.

Then These Specialized Agents within the Department of Law Enforcement are
required on behalf of State,County, City, Town, Village to perfect Duties as
to gathering Witness Statements, Control of Evidence and Evidence Collection,
and provide a complete and formal Record of each event. Naturally this is act-
ually the Foundation of each and every Crime and fundamental procedure for Leg-

islatively Approved Due Process of Law. [The Chain of Evidence].

The State of California, The Only State within the Union of the United States created a "Peace Officers Bill of Rights". This to create issuance of protections of Law Enforcement Government Employees who are alleged to Violate Their Duties Under Color of Law. And Seal the Records and Documentation of Their Bad Acts, Complaints, Misconduct, Work Related Failure, And preclude these Records from the public, and from the Defense, in their work related duties perfected by State, County, City, Town, Village Prosecutors. The State, City, Town, Village Prosecutors are Issued The Same Protections. See Wardius v. Oregon, 412 U.S. 470 (1972): (Holding due process is violated where there is not a balance of forces between Accused and Government; That rules which disadvantage Accused, must also apply to Government).

In People v. Pearson, 165 Cal.App.4th. 740; 81 CR.3d. 234; 2008. Cal.App. Lexis 1161 ☆☆☆, Modified 2008 Cal.App. Lexis 1366: (Cal.App.2d. Dist. Aug. 28, 2008) (236) "No one can take advantage of his own wrong". (Civ.C. §3517). The equitable maxim surely applies where the party intentionally interferes with the truth-seeking functions of the Court. "Here defendant concealed the victim-witness and obtained a partial acquittal. When he produced the same victim-witness for his own purpose on other accounts, the trial court vacated the partial acquittal. In these circumstances defendant is estopped from seeking refuge under the (double) jeopardy umbrella". "Our courts are not gambling halls but forums for discovery of Truth". (People v. St. Martin (1970) ) 1 Cal.3d. 524, 523 [83 CR. 166, 463 P.2d. 3907]. See also, People v. Zack (1986) 184 Cal.App. 3d. 409, 415 [229 CR. 317].

Therefore, The wording of People v. Pearson, 165 Cal.App.4th. 470; which cites to and is based upon the maxim "No one can take advantage of his own wrong". Which was upheld in Giles v. California (2008) 522 _U.S._; 171 L.Ed.2d. 488;

128 S.Ct. 2678; Pearson's language is on point with slight modification; "No one can take advantage of his own wrong". (Civ. C. 3517). Surely this equitable maxim applies here, The Prosecution conceals All Impeachment Discovery of All Government Witness, and thereby, Obtains a conviction of Capital Murder with special circumstances; which it would not have gained without the suppression of Brady Material...In these circumstances Government is estopped from seeking refuge under Defense of "Untimely", "Successive" or Other "Procedural Defaults" Barring Petitioner from being Heard and Granted Relief on these Claim's Unbrella.

> California Constitution, Article V, §13:
> "Subject to the powers of the Governor, The Attorney General shall be the Chief Law Officer of the State. It shall be the Duty of the Attorney General to see that the laws of the State are uniformly and adequately Enforced. The Attorney General shall have Direct Supervision over every District Attorney and Sherriff and over such other Law Enforcement · Officers as may be designated by Law, in all matters pertaining to the duties of their offices, and may require of said officers concerning the investigation of crimes in Their respective jurisdiction as the Attorney General may deem advisable. Whenever in the opinion of the Attorney General Any Law of the State is not being adequately enforced in any County, it shall be the Duty of the Attorney General to Prosecute Any Violations of the Law of which the Superior Court shall have jurisdiction, and in such cases of which the Attorney General shall have All the Powers of District Attorney. When required by the public interest or directed by the Governor, The Attorney General shall assist Any District Attorney in Discharge of the Duties of that Office". [as Amended Nov. 5, 1974].

As applicable to District Attorneys failing to fully comply with Discovery Orders and Brady Duties and Duties to provide Due Process, et. al. State and United States Constitutional Rights.

Nevertheless, as You can see, pursuant to Cal. Constitution. There is only One Office of Prosecutors and One Office of Law Enforcement under California Law, and That Office has Responsibilities to ensure "All" District attorneys are Complying with "All Laws" "adequately" -- which includes discovery---obviously. Also being in Direct Supervision of each District Attorney and Police Officer pertaining to the Duties of Their Offices, "and" when Required by the public

interest...The Attorney General shall assist Any District Attorney in the Discharge of the Duties of that Office. Hense, it is clear that all a District Attorney needs to do is ask and it shall be received. Certainly it is in the public interest to have District Attorneys fully complying with Their Brady Duties, not only for Fair Trials which are Reliable, but also to avoid Wrongful Convictions and Reversals of Convictions which waste tax-dollars and Violate Civil Rights of Accused Persons, Often leading to the Conviction of the Innocent.

The Clarification of the Attorney Generals Responsibilities for Direct Supervision of All District Attorneys and Law Enforcement; Therefore, it is reasonable to personally serve the Attorney General Themselves by Mail with All Discovery Requests and Complaints about Failures of District Attorneys and Police Officers to properly perform Their Disclosure Duties ---including presenting notes which belong to The People, Citizens who pay taxes. They are not "the Officers" notes, but are notes "made by officers in the performance of Their Duties for the Citizenry", and They have No Authority to destroy said notes--to which Accused Persons' have been determined to have Rights of Access. Further, The Records as to performance of the Duties as a Certified Peace Officer are the property of the Citizens. These Records clearly provide the Rebuttal to the alleged expertise alleged by Officers and Their professionalism in perfecting said Duties. Absent of these Records, The abilities to Confront All Witnesses Who present evidence, Testimony against the Accused, There is No Due Process of Law, or Equal Protections of Law.

See, United States v. Chapman, 524 F.3d. 1073; 2008 U.S. App. Lexis 9700, "This argument fails because it is unsupported by the Record. The District Court did make specific factual findings, based on the totality of the proceedings before it, That "the Assistant U.S. Attorney Acted flagrantly, willfully, and in bad faith"; "That He had made Affirmative Misrepresentation[s] to the Court";

That the Defendant would be prejudiced by New Trial; and that No Lesser Sanction could adequately remedy the Harm done. It made these findings after reviewing the 34 pages of undisclosed materials admitted into evidence as "Hearing Exhibit 1" and after witnessing first hand· the assistant U.S.Attorney's misrepresentations. While it is true that the District Court did not Review ALL 650 pages of undisclosed documents, such Review was unnecessary in light of the Government's Own Concession that these [**24] were "All materials that We should have turned over".

The Government misrelies upon U.S. v. Cadet, 727 F.2d. 1453 (9th. Cir. 1984), and U.S. v. Gatto, 763 F.2d. 1040 (9th. Cir. 1985) [27] to argue that Brady/ Giglio Violations, No matter how flagrant, can never justify dismissing an Indictment. In Cadet, The District Court dismissed the indictment after the Government [*1086] Failed to comply with overly broad discovery order. 727 F.2d. at 1470. We first held that "significant portions of the [district court's] order were invalid" Id. at 1454-55. "Because we...determined that the Court abused it's discretion in ordering the Government to Comply with an Order which is partially invalid, We...Vacate[d] the judgment dismissing this action as a disproportionate Sanction for Lack of good faith compliance by the Government.

Finally, in Kojayan we made clear that in determining the proper remedy [for prosecutorial misconduct], we must consider the Government's willfullness in committing the misconduct and its willingness to own up to it. 8 F.3d. at 1318 [*1088] as described above, the districtcourt here did not abuse its discretion in finding that the Government acted "flagrantly, willfully and in bad faith in misrepresenting its compliance with its discovery obligations".

E.g. Middleton v. Middleton, 188 Ark. 1022, 1026, 68 S.W. 2d. 1005, 1006 (1934); "Where some written instruments, which is a part of the material evidence in a case, has been destroyed, The presumption arrises that, if it had been produced, it would have been against the interst of the spoliator, and, where

the instrument destroyed is of such nature as to destroy all evidence, there follows a conclusive presumption that, if produced, it would have established the claim of the adversary of him who destroyed the instrument where it is shown that the destruction was willfull".

Reviewing the Credibility of Compliance to Legislatively Approved Due Process as Demanded in procedure and in Correlation with Demands of Constitution, Statutes is directly related to Credibility of Investigation, Investigators, and All related Prosecution Personnel Assigned to the Case at Issue. Kattle v. Northwest Kidney Center, 146 F.3d. 1056, 1060 (9th. Cir. 1998); The Ninth Circuit identified three circumstances in which the Sham Litigation exception might apply. Kerney argues for the third here. Where the allegedly unlawful conduct consists of making intentional misrepresentation to the court and those misrepresentations or the parties knowing fraud upon ...the Court deprive the Litigation of its legitimacy. Id. We are persuaded that Defendants alleged misconduct here was precisely the sort that sham exceptions was created to address.

Now viewing the Obligations and Duties upon Attorneys licensed to practice Law on behalf of Defense of Accused. This Clarifying the Fundamental Foundation of Defense owed to Their Clients, Prosecution, and Trial Court, a Fact Finder or Jury.

An Attorney, Officer of the Court, performance was not only unreasonable - it violated the State's Rules of Ethical and Criminal Statutes regarding attorneys behavior. Strickland v. Washington, supra. 466 U.S. at pp. 687-688. The Court has said, "The primary purpose of attorney Discipline is not the punishment of the Attorney; it is the protections of the Public, the profession and the Courts". In re: Nadrich (1998) 44 Cal.3d. 271, 276 (243 Cal.Rptr. 218, 747 P.2d. 1146).

The Right to the Effective assistance of Counsel at Trial is a Bedrock prin-

cipal in Our Justice system. It is deemed as an "obvious truth" The idea that "Any person hauled into Court, Who is too poor to hire a lawyer, cannot be assured a Fair Trial unless Counsel is provided for him", Gideon v. Wainwright, 372 U.S. 335, 344; 83 S.Ct. 792; 9 L.Ed.2d. 799 (1963). Indeed, the Right to Counsel is the foundation for Our Adversary System, Defense Counsel tests the prosecutor's case <Testimony, Evidence, experts, and Credibility of Prosecutors Staff to include Investigators, Scientific Collectors, Processors> to insure that the proceedings serve the function of adjudicating guilt or innocense, while protecting the Rights of Person Charged. See, e.g. Powell v. Alabama, 287 U.S. 45, 68-69; 53 S.Ct. 55; 77 L.Ed. 158 (1932).

"The Defendant requires the guiding hand of Counsel at every step in the proceedings against Him. Without it, though He be Not Guilty, He faces the danger of Conviction because He does not know how to establish His Innocense". Effective Trial Counsel preserves Claims to be considered on Appeal, See e.g. Federal Rule Criminal Procedure 52(b)", and in Federal Habeas proceedings, Edwards v. Carpenter, 529 U.S. 446; 120 S.Ct. 1587; 146 L.Ed.2d. 518 (2000).

In Martinez v. Ryan (2012) U.S. Lexis 2317; 182 L.Ed.2d. 272. See Primus, Structural Reform in Criminal Defense, 92 Cornell L.Rev. 679, 689 and N. 57 (2004) (Most Rules give between 5 and 30 days from time of Conviction to file a Request to expand the Record on Appeal). Thus there are sound reasons for Deferring considerations of Ineffective Assistance of Trial-Counsel Claims until the Collateral Challenge Review Stage, but this decision is not without consequenses for the State's abilities to assert a procedural default in later proceedings. By deliberately choosing to move Trial Counsel's ineffectiveness Claims outside of the Direct Appeal process, where Counsel is Constitutionally Guaranteed, The State significantly diminishes Convicted Citizen's ability to file such claims.

Our Trial Courts are bound by Duty to insure the Adversary Process meets All Constitutional and Statutory Mandates. This is actually served by controling Evidentary Hearings to insure Evidence meets criteria of Compliance of Constitution and Laws. This by a Record of Legal Chain of Evidence, and Review of Any Objections raised by either side. However, Legal Compliance to Search Warrants, Arrest Warrants are created by Issuance of the Courts. This creates a Legal Record of which has to comply with demands of Statute, or it is not permitted to be used at Trial.

Further, When a Trial Judge in "any" case is presented with Legal Notice of Obstructions of Justice. This Demands Absolute Action, and All proceedings Stopped until an Evidentary Hearing is to be perfected, absent of Compliance of this Invoked Duty denies all presumption of any Meaningful Due Process of Law. "That Complaint is not the commission of mere error, but a wrong so fundamental that it made the whole proceeding a mere pretense of a trial and rendered the conviction and sentence wholly Void". Moore v. Dempsey, supra. [261 U.S. 86].

In Glasser v. U.S. (1942) 315 U.S. 60, 71, hn. 8, "Upon the Trial Judge rests the Duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. Speaking of the obligation of the trial court to preserve the right to jury trial for the accused, Mr. Justice Sutherland said that such duty "is not to be discharged as a matter of rote, but with sound and advised discretion, With an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a Caution increasing in degree as the offense dealt with increase in gravity". Patton v. U.S. 281 U.S. 276, 312-13. The Trial Court should protect the right of an accused to have the assistance of counsel. "This Protecting Duty imposes the serious and weighty Responsibility upon the Trial Judge of determining

whether there is an intelligent and competent waiver by the accused.(h.n. 9).
while an accused may waive the right to counsel, whether there is a proper wai-
ver should be clearly determined by the Trial Court,and it would be fitting and
appropriate for that determination to appear on the record". Johnson v. Zerbst,
304 U.S. 458, 465.

"No such concern on the part of this trial court for the basic rights of
Glasser is disclosed by the record before us. The possibility of the inconsis-
tent interests of Glasser and Kretske was brought home to the court, but instead
of jealously guarding Glasser's Rights, the court may fairly be said to be re-
sponsible for creating a situation which resulted in the impairment of those
rights. For the manner in which the parties accepted the appointment indicates
that they thought they were acceding to the wishes of the trial court...the
court made no effort to ascertain Glasser's attitude or wishes. Under these cir-
cumstances, to hold that Glasser freely, albeit is tacitly acquiesced in the
appointment of Stewart is to do violence to reality and to Condone a Dangerous
laxity on the part of the Trial Court in the discharge of its Duty to Preserve
the Fundamental Rights of the Accused".

"Glasser urges that the court's appointment of Stewart...inhibited Stewart's
conduct of his defense, in that it prevented Stewart from adequately safeguard-
ing Glasser's Right to have Incompetent Evidence excluded and from Fully Cross-
Examining the Witnesses for the Prosecution".

In Powell v. Alabama, 287 U.S. 45, 52; "However guilty defendants, upon in-
quiry, might prove to have been, they were, until convicted, presumed innocent.
It was the Duty of the Court...to see that they were denied no necessary Incid-
ent of a Fair Trial...The sole inquiry we are now permitted to make is whether
the federal Constitution was contravened (Rogers v. Peck, 199 U.S. 425, 434...
we confine ourselves...to the inquiry whether Defendants were in substance

17.

Denied the Right to Counsel...whether such denial infringes the due process clause of the Fourteenth Amendment)".

"Judge's Constitutional Duty to be alert to protect the rights of accused against occurrences that potentially call into question the fairness of the proceedings", U.S. v. Osama Awadallah, 436 F.3d. 125. (2006) U.S. App. Lexis 1867. Cited in U.S. v. Hamid Hayat, 9th. Cir. No. 07-10457, March 13, 2013 (Tashima, Cir.J., dissenting).

"Trial Court can no more stand idly by while fundamental rights of a criminal defendant are forfeited through inaction of ill-prepared counsel than a reviewing court can fail to notice plain errors of defects affecting substantial rights", U.S. v. Powe, 529 F.2d. 833, app after remand 627 F.2d. 1251.

"Although a court is entitled to rely to a great extent on the parties attorneys to protect their own client's interests, court had a duty to assure that criminal defendant receives a fair trial", U.S. v. Bosch, 584 F.2d. 1113.

"Judge has obligation of safeguarding rights of the accused", U.S. v. Pinkey, 548 F.2d. 305.

"It is primary responsibility of the trial court judge to govern judicial proceedings so as to insure the accused receives a fair trial comporting with fundamental due process", U.S. v. Gurney 558 F.2d. 1202, reh den 562 F.2d. 1257, cert den. Miami Herald Publishing Co. v. Krentzman, 98 S.Ct. 1606; 435 U.S. 968. See also, U.S. v. Chausse, U.S. v. Head, U.S. v. Hearst.

"Trial Court has Sworn Duty to insure Defendant's Constitutional Rights are preserved during Trial", U.S. v. Hearst, 412 F.Supp. 873, [Patti Hearst].

"Trial Court Has discretionary prerogative and Duty on appropriate occassions to intervene sua sponte in proceedings in order to control them", U.S. v. Head, 697 F.2d. 1200, cert. den. 103 S.Ct. 3113.

"...trial Court remains under burden to use all reasonable means under cir-

cumstances to insure a Fair Trial, That Responsibility will require responses
from the court tailored to the particular circumstances", U.S. v. Chaussee.

P.V. Fosselman, 33 Cal.3d. 572; 659 P.2d. 1144; 189 CR 855; 1983 Cal. Lexis
164 (March 17, 1983) Modified April 20, 1983, see h.n. 9; Cal. Penal Code §1181,
"enumerates Nine Grounds for Ordering a New Trial". The section expressly limits
the grant of a New Trial to only the listed grounds, and Ineffective Assistance
of Counsel is not among them. Nevertheless, The Statute should not be read to
limit the Duty of Trial Courts to insure that Defendants be Afforded Due Pro-
cess of Law. Upon the Trial Judge rests the duty of seeing that the trial is
conducted with solicitude for the essential rights of the accused. Glasser v.
U.S. (Id.), see also Powell v. Alabama, (Id.); P.V. Davis (1973) 31 Cal.App.
3d. 106, 110; 106 CR 897; Schwarzer, dealing with incompetent counsel--the Trial
Judge's Role (1980) 93 Harv. L.Rev. 633, 639, f.n. 27, 649. The Legislature has
No Power, of course, to limit this Constitutional Obligation by Statute; P.V.
Davis, supra. 31 Cal.App. 3d. at p. 110; It is undeniable that Trial Judges are
particularly well suited to observe Courtroom performance and to Rule on ade-
quacy of Counsel in Criminal Cases tried before Them, See McMann v. Richardson
(1970) 397 U.S. 759, 771; Though, in appropriate circumstances Justice will be
expedited by avoiding appellate review or habeas corpus proceedings, in favor
of presenting the issues of New Counsel's effectiveness to the Trial Court as
the basis of a Motion for New Trial.

"It is the Trial Court's Duty to accept Notice of Appeal, and forward the
Notice of Appeal to Higher Court. In Capital Cases this would be the California
Supreme Court. Upon receipt, The California Supreme Court Notices Defendants to
determine if counsel needs to be appointed for Automatic Appeal". Upon Certif-
ication Appeal Counsel is to be Appointed within 60 days after sentencing. The
first obligation of appointed counsel is to determine by Review, Corrections,

and Augmentation of Records. This is point of conception as to issues which raises serious questions to Validity of Judgment and Sentence.

"It affords the State Courts the opportunity to resolve the issues shortly after trial, while the evidence is still available both to asses the Defendant's Claims and to Retry the Defendant effectively if he prevails in his appeal". See _Friendly_, Is innocent Irrelevant? Colladeral Challenge of Judgment and Sentence, 38 V.Chi.L.Rev. 142, 147 (1970). This type of rule promotes not only the Accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to Litigate All Claims together as quickly after trial as the Docket will Allow, and while the Attention of the Appellate Court is focused on his Case". 468 U.S. at 10-11. "The U.S.S.C. makes clear that speed of litigation _promotes accuracy_ and _efficency of judicial decisions_". "Due Process and Equal Protection Clause Right to speedy justice and _Accuracy and Efficiency_ of his right to raise ineffective assistance of counsel speedily while he was able to locate and investigate All Witnesses, Evidence in support of all issues in Collateral Challenge/Habeas Corpus as well as ineffective assistance of Counsel."

The Record on Appeal, particularly in a Capital Case, Must be _Accurate_ and _Complete_, _Chessman v. Teets_, (1957) 354 U.S. 156, 165-166; U.S. Const. Fifth, Sixth, Eighth and Fourteenth Amendments; and Calif. Const. Art. 1. Sections One, Seven, Fifteen and Seventeen, Because Reviewing Court May NOT go behind the Transcripts, _People v. Crownover_, (1937) 34 Cal.App.2d. 7, 10. As Supreme Court Justice _Goldberg_ observed, "Anything short of a Complete Transcript is _incompatable_ with effective Appellate advocacy", _Hardy v. United States_ (1964) 375 U.S. 277, 288 (conc. opn. of Goldberg, J.) Indeed, A Complete and Accurate Record is an essential component of the State and Federal Constitutional Rights to Meaningful Appellate Review, Hightened Reliability in a Capital proceeding under the

Eighth Amendment, Procedural and Substantive Due Process, Equal Protection of the Laws, and Effective Assistance of Appellate Counsel. U.S. Const. Fifth, Sixth, Eighth and Fourteenth Amendments, Calif. Const. Art. 1, Sections Seven, Fifteen and Seventeen; Dobbs v. Zant (1993) 506 U.S. 357, 358; Parker v. Dugger (1991) 498 U.S. 308, 321; Chessman v. Teets, (Id.). [Capital Petitioner is entitled to have his conviction reviewed on the basis of a transcript compiled in conformity with procedural due process, In re: Steven B. (1979) 25 Cal.3d. 1, 7 - 9 (destruction of Court Reporters notes part of a juvenile jurisdictional hearing resulted in an inadequate record on appeal and required New Hearing]. People v. Barton (1979) 21 Cal.3d. 513, 517 - 520 [failure to Augment record on appeal constituted ineffective assistance of counsel]; In re: Rodericks (1981) 125 Cal.App.3d. 48, 53 [destruction of evidence essential to a Legal Issue resulted in an inadequate record and required New Hearing]; People v. Gloria (1975) 47 Cal.App.3d. 1, 6 - 7 [failure to report instructions as given orally to Jury denied Due Process on Appeal]; See also, Hart v. Eyman (9th. Cir. 1972) 458 F.2d. 334, 339 [inadequate appellate record Violates Federal Due Process Rights].

Two United States Supreme Court decisions emphasizes the special need for an Accurate and Complete Record in A Capital Case. In Parker v. Dugger, (Id.), The Court underscored "the crucial role of Meaningfull Appellate Review in ensuring that the death penalty is not imposed arbitrarily or irrationally", and noted that such review requires that the Appellate Court consider the "Actual Record" of the Trial proceedings in the Trial Court. In Dobbs v. Zant (Id.) the Supreme Court held that it was error to refuse to consider the Newly-Discovered Transcripts of defense counsel's closing arguments proffered in a Habeas Corpus proceeding. We have emphasized before the Importance of reviewing Capital Sentences on Complete Record", (Id.) at page 358, citing Gardner v. Florida, (1977) 430 U.S. 349, 361; and Gregg v. Georgia, (1976) U.S. 153, 167, 198; See also, People

v. Hawthorne (1992) 4 Cal.4th. 43, 63 [Noting the critical role of a proper and complete record in facilitating meaningful appellate review], and People v. Frye (1998) 18 Cal.4th. 894, 941 [acknowledging a "federal due process right to meaningful appellate review" that includes the right to a complete capital case record].

These rights, as they apply to capital cases, are codified in Penal Code Sections 190.7 and 190.9 and Rule 8.610 which define the record on appeal in expansive terms. Section 190.7, subdivision (a), provides in relevant part that the entire record in a capital case includes, but is not limited to, the following:

> (1.) The normal and additional record prescribed in the rules adopted by the Judicial Counsel pertaining to an appeal taken by the defendant from a judgment of conviction.
> (2.) A copy of any other paper or record on file or lodged with the superior or municipal court and a transcript of any other oral proceeding reported in the superior or municipal court pertaining to the trial of the case.

Thus, the appellate record should include a copy of any paper or record on file or lodged with the trial court. Such papers are not limited to formal pleadings but include any paper or exhibit reviewed by the Court in relation to the trial. (See, e.g. People v. Barnard (1982) 138 Cal.App.3d. 400, 407 [police file reviewed by Judge at trial, but never attached to a pleading or offered as an exhibit, should be included in the appellate record]. )

Section 190.9, subdivision (a)(1) mandates that "all proceedings...including all conferences and proceedings, whether in open court, in conference in the courtroom, or chambers" must be transcribed and made part of the record. (see also rules 8.613 and 8.616 [outlining court reporters duty to transcribe all proceedings].) The definition of "proceeding" in a capital context is very broad and includes anything done or to be done in a court of justice or before a judicial officer. People v. Deer(II) (1991) 53 Cal.3d. 705, 720, citing Lister v. Superior Court (1979) 98 Cal.App.3d. 64, 70. The California Supreme Court has

insisted that trial courts should "meticulously comply with Penal Code section 190.9". People v. Freeman (1994) 8 Cal.4th. 450, 511; and "assiduously preserve a detailed account of all proceedings regardless of their perceived significance, particularly in capital cases..." People v. Hawthorne (Id.), see also People v. Holt (1997) 15 Cal.4th. 619, 708, fn. 30 [criticizing trial court for failure to comply with this requirement].

Rule 8.610(a) also is broad in its scope. It incorporates the entire list of items that are mandatory or permissible in both the clerk's and reporter's transcripts in non-capital criminal appeals and further requires inclusion in the clerk's transcripts of "any other document filed or lodged in the case" as well as reporter's transcripts of "any other oral proceedings in the case..." Rule 8.610(b) requires inclusion under seal of "[a]ll documents filed or lodged confidentially under Penal Code sections 987.9 or 987.22" and [a]ll reporter's transcripts of in camera proceedings..."

These seemingly all-inclusive requirements are only a minimum, for [t]he superior court or the Supreme Court may order that the record include additional material. (Rule 8.610(a)(4); see also 6 Witkins, Cal.Crim. Law (3d. ed. 2000) Criminal Appeal, §116, pp. 362-363 ). Thus, as the California Supreme Court has ruled, in a capital case, "neither the trial court nor counsel may decline to include any portion of the proceedings in the record on appeal". Marks v. Superior Court (2002) 27 Cal.4th. 176, 190. Moreover, unlike a non-capital appeal (see 6 Witkins, Cal.Crim. Law, supra. §114, pg. 361), no showing of materiality must be made in an automatic appeal to add transcripts and documents, since all proceedings and all papers must be included in the capital record. (Rule 8.610, Rule 8.613(g), Rule 8.619(c)-(d) ).

Due process also requires that the record in a capital case be correct. The California Supreme Court has recognized that the "rules on Appeal contemplate

that no reporter is infalible, that errors may exist in a proposed transcript, that corrections may be proposed and that it shall be the duty of the trial judge to finally determine the record". People v. Chessman (1950) 35 Cal.2d. 455, 461.

California Constitution Art. 1. Section 11, creates a Constitutional Right to Habeas Corpus and especially Collateral Challenge. The Constitution FORBIDS "ANY" type of suspension. The Suspension of Collateral Challenge/Habeas Corpus Violates California's Constitution Art. 1, §7(a)(b) by Denial of Due Process of Law. At the point of Suspension California Const. Art. 1 §6 which PROHIBITS Incarceration by Enslavement or Involuntary Servitude. All of these Violations Violate the paralle provisions of United States Constitution and especially U.S. Const. Amendment XIV.

Further, California State Laws, Penal Codes in Several Areas provide for Challenge to Violations by Investigators, Evidence, Collectors of Evidence, Experts and Anything which may be construed as to Deny Due Process or that the Trial Process. One of those provided is Cal. Penal Code §1473, "Person authorized to prosecute Writ for False Evidence, Tainted behavior, or Misconduct by Prosecution". Cal. P.C. §1473(b)(1)(3).

This Honorable Court has Clarified in Harris v. Nelson, 394 U.S. 286, (9th. Cir.):

> "The Writ of Habeas Corpus is the fundamental instrument for safeguarding individual freedoms against arbitrary and lawless State actions. It's pre-eminent role is recognized by the admonitions in the Constitution that "The Writ of Habeas corpus SHALL NOT BE SUSPENDED", U.S. Const. Art. I. §9.cl.2. The scope and flexibility of the Writ its capacity to reach All Manner of Illegal detention - its ability to cut through barriers of Form and procedural mazes - has always been emphasized and jealously guarded by Courts and Law Makers. The very nature of the Writ demands that it be administered with the initiative and flexibility essential to

ensure that miscarriages of justice within its reach are surfaced
and corrected".

In 1998, The California Supreme Court reemphasized in Robbins that "It is
the Appeal that provides the basic and primary means for raising challenges to
the fairness of the Trial", Robbins, 18 Cal.4th. 777. "Habeas Corpus, on the
other hand, is an "extraordinary remedy" available for "matters that undermine
the Validity of Judgment, of Legality of Defendants Confinement or sentence,
but which are not apparent from the Court Records on Appeal". Robbins, 18 Cal.
4th. 770,776 (1998); in re. Harris, 5 Cal.4th. at 827. In California, a pet-
ition for Writ of Habeas Corpus "should be FILED as promptly as the circum-
stances of the Case Allows". In re. Stankewitz, 40 Cal.3d. at 96, "Substantial
delay is measured from the time Petitioner or his Counsel "knew", or "should
have known" of the information offered in support of the Claims and Legal Basis
for the Claims".

In spite of Contractural Agreement between the State of California Constitu-
tion and United States Constitution. We View Legislative Intent by Legal Lang-
uage within the Constitutions. Cal. Const. Art. I. §11, IS Actually THE SAME as
U.S. Const. Art. I. §9.cl.2; And Calif. Const. Art. I. §7(a)(b) are One in the
SAME as U.S. Const. Fourteenth Amendment. And Failure to Obey Legislatively App-
roved Legal Procedure, Approved Due Process Demands, Results in Violations.
Again, Calif. Const. Art. I. §6 is One in the Same as U.S. Const. Thirteenth
Amendment, PROHIBITING Enslavement or Involuntary Servitude.

Pursuant to the Demands of the United States Constitution Fourteenth Amendment.
The State of California HAS TO PROVIDE an unfettered Challenge to Validity of
Illegal Conviction as provided by Inalienable Guaranteed Rights by U.S. Const-
itution. Further, Absent of Inalienable Rights, The Incarcerated Citizen is De-
nied of Due Process of Law. This type of Incarceration is deemed as Enslavement

and Involuntary Servitude. NO State within the Union of the United States is Exempt from the Demands provided by U.S. Constitution Fourteenth Amendment. This is concisely clarified by Legal Language of Both the State of California and the United States Constitutions, "As a Matter of Law".

The Treaty between the United States and State of California as Created by Acceptance in Both Constitutions, by parallel provisions. The Immunities, Rights established by the U.S. Constitution Have to be perfected within both Constitutions by "parallel provisions". The State of California IS Invoked by the U.S. Constitution's Fourteenth Amendment to Guarantee NO Denial, Delays of Inalienable Rights provided by the U.S. Constitution to California's U.S. Citizens are Committed.

Fourteenth Amendment:

> "No State shall Make or Enforce ANY LAW which shall abridge the privileges or immunities of Citizens of United States, Nor shall Any State Deprive Any Person of Life, Liberty or Property without Due Process of Law, Nor Deny Any Person within its Jurisdiction of the Equal Protection of Law".

The State of California has clarified by and through Clear and Concise Legal Language as to if the State of California is bound by U.S. Constitution's Suspension Clause as related to Writ of Habeas Corpus. See Cal. Const. Art. III. §1:

> "The State of California is an inseparable part of the United States of America, And United States Constitution IS The Supreme Law of the Land".

This is Accepted by Legal Language of U.S. Const. Art. IV. §2:

> "The Constitution and Laws of the United States which Shall be Made in pursuance thereof, and All Treaties Made, or shall be made, under the Authority of the United States, SHALL be Supreme Law of the Land, and The Judges in Every State shall be Bound thereto. Anything in the Constitution or Laws of ANY State to the contrary NOT WITHSTANDING".

The entire Appellate Review Process is founded upon the Legislatively Approved Due Process from start of a criminal case to conviction or acquittal.

This clarifying the extreme importance of a Trial Courts creation of a Certified Accurate Record in which is the sole foundation supporting the Trial Courts Judgment and Sentence. It is within these Records that establishes the Certification of all evidence presented is preserved and it's legal standing is preserved by a Chain of Evidence.

Our Appellate Review Process is based upon the Records of the Legal Process utilized to obtain convictions. This reliance upon the records demands extremely strick accountability of Duties Owed by both the Trial Court, and Court Clerk, Appeal Clerk. This is especially true in Evidentary Hearings, Motion Hearings, and actual presentation of Any and All Evidence and Testimony to the Jury. It is by the completion of this Legal Process which is to certify Due Process Compliance prior to admitance into Records.

The Records as to the Defense, Created by Defense Attorney provides a full and complete Review of Investigation, Interviews, Retained experts, Challenges to Evidence, Testimony and a complete foundation for the strategy perfected by the Defense. The Records should be served upon Appellate Defense Counsel as soon as possible. This provides the Appellate Defense Counsel the opportunity to Review the Trial Defense with Appellate Counsel while Memories are still fresh in Trial Counsel's Mind.

These Records become extremely important when we view the State of California, The Only State in the Union which has created a "Peace Officer's Bill of Rights". This to remove Any Legal Challenge to the Credibility of Certified Peace Officers, Investigators, Prosecutors, experts and Evidence Collectors. The Removal of these Agents Accountability was perfected by State Attorney General and Governor. These Agents are Elected Government Agents whose sole duty is Demanded by Vested Authority, To perform ALL Duties Incumbent upon them by the Constitution, Laws and Treaties of the United States.

These Elected Officials Failure to perform Their Duties Owed by Vested Author-
ity was clearly clarified as a Failure, and departure from the actual Criminal
Justice System, by Violating the Constitutions, Laws of both the State of Calif-
ornia and United States. This was reflected by the California Supreme Court who
"Reversed" 92.8% of California's Capital Cases. These Adjudications were created
by "The Bird Court".

Then the State Attorney General, Governor, State Prosecutors and Peace Off-
icers issued threats to California's Highest Court. Either Affirm Illegal Con-
victions or be Removed from sitting on the California supreme Court. [See Ex-
Hibit C.1- C.4 ].

    The Exhibits by and through a complete review by Six Professors of
    Law, utilizing Facts created by Both the Rose Bird Court and the New-
    ly Created California Supreme Court. After Threats were issued and
    carried out.

The California Supreme Court, Now Reappointed by the Acceptance of the
threats and demands of the State Attorney General, Governor, Prosecutors and
Peace Officers, Now Affirm 95% of ALL Capital Case Convictions, and DENY 95%
of All Capital Habeas Corpus'. These Changes went into effect in 1987, and this
created problems for the State's Judicial System. Especially if Reversed by
the U.S. Courts' shortly after the Affirmation by the State's Supreme Court.

This prompted the California Supreme Court  to Promulgate New Policies, Rules,
and Amendments to the Constitution, and Repeal Statutory Law of the State of
California. The fact that California's Constitution FORBIDS this Rule Making
Authority to All of the Judicial Branch was of little concern. Especially in
light of the fact, this encroachment was perfected to Support the Corruption of
the State of California's Criminal Justice System in favor of the State attorn-
ey Generals Office, Prosecutors, Trial Court Judges and Peace Officers. The
alternative would result in being Removed from the Bench.

< Please take Judicial Notice of Exhibits **B.1** , **B.2**. First from State of California Public Defenders Office after Review of Exhibits C.1 - C.4, and in practice today. The Second, from United States Public Defenders Office which outlines the complete Illegal and Unconstitutional System, Procedure, Policies created to Deny Due Process of Law and Constitutional Rights of Their Clients. >

The California Supreme Court Promulgated Policies and a Procedure for All Capital Cases. All Attorneys appointed to Represent Capital Defendants have to be Certified by the California Appellate Project (C.A.P.) to unconditionally Accept the California Supreme Court's Promulgated Policies. (See Exhibit **A** , Cal. Supreme Court's Promulgated POLICIES).

These Policies in question fail to actually project the process created by the California Supreme Court, and State's Actions to Obtain and Maintain False and Unconstitutional Convictions/Sentences of Death. In viewing the Facts which are clearly depicted by a Chart created by the United States District Court's Honorable Judge Carney, Case No. CV-09-02158-CJC. [See Exhibit **D** , Court Order with Chart in support].

"The Chart clarifies a minimum of 18 Years to actually reach the U.S. Courts, and a maximum of 35 Years and still counting. (quoting the Court's Order), "The Chart strongly suggests that executing those essentially random few who outlive the dysfunctional post-conviction review process serves no penological purpose and is arbitrary in violation of well-established constitutional principles". Order dated June 11, 2014".

Now Reviewing the Actual Process and procedures created by the California Supreme Court and supported by State of California's Governor and State Attorney General. Further, All paid for by The Union of the United States and its United States Citizens.

The First Action by the California Supreme Court was to Repeal Statutes in Appointment of Counsel after Sentencing in Capital Cases. This from (60 Days) extended to (3 to 6 years).

In Coe v. Thurman, 922 F.2d. at 529:

"Where a State guarantees the right to a Direct Appeal, as California

does, The State is required to make that appeal satisfy the Due Process Clause". Evitts v. Lucey, 469 U.S. 387; 105 S.Ct. 830; 83 L.Ed.2d. 821 (1985); "While the Sixth Amendment guarantees the Accused a speedy trial, excessive delays in the appellate process may also rise to a level of due process violations". United States v. Antoine, 906 F.2d. 1379, 1382 (9th. Cir. 1990); see also Burkett v. Cunningham, 826 F.2d. 1208, 1221 (3rd. Cir. 1987); Delancy v. Caldwell, 741 F.2d. 1246, 1247 (10th. Cir. 1987); Rheuark v. Shaw, 628 F.2d. 297, 302 (5th. Cir. 1980), cert. denied subnom. Rheuark v. Dallas County, 450 U.S. 931; 101 S.Ct. 1392; 67 L.Ed.2d. 365 (1981).

The California Supreme Court "years" after sentencing appoints Counsel for the Direct Appeal Only.

See Transcript of Oral Argument in Martinez v. Court of Appeals of California, Case No. 98-7809 at *9 - *8 (argued Nov. 9th. 1999) (available on Lexis at 1999 U.S. trans Lexis 69) [Hereafter "transcript"]. See also Transcript at *11:

[ "Q: So, I don't understand how it comes to a great constitutional issue if the only difference is that you are getting something more, that is, he could put in his own brief and in addition, he gets the lawyer's brief". Now it might be another case if California says NO, We won't accept that pro se brief in addition"] (emphasis added).

"The availability to a Represented Litigant of the option to file pro se on appeal was subject to the First question asked of Supervising Deputy Attorney General Robert M. Foster".

[ "Q: Now, California does allow a pro se appellant to file a brief in addition to that filed by Attorney"?

"A: Your Honor, I wanted to correct the impression of this Court. Some of the California Courts of Appeals allow the pro se the convicted individual to file directly a pro se supplemental brief. Some of the Courts will not allow the direct filing, but what those other courts will do was allow what, in effect, is an indirect filing, which is we've seen the court return the document to the prisoner, saying all correspondence must come through Counsel. Counsel then submitts the documents to the Court and they will accept it that way. Additionally, All--

"Q: That's not essential as far as you're concerned"?

"A: No, Your Honor. I think that it is simply a process that California has developed that is not Constitutionally Required".

But Justice Kennedy, to finish up the -- the picture so you understand, "All of the California Courts will accept pro se habeas petitions from the inmate. Because one of the topics that can always be entertained is ineffective assistance of appellate counsel, either directly or indirectly, All The California Appellate Courts will hear from the pro se or The -- The individual who wants to be pro se but is not being allowed to be pro se".

However, in viewing California Supreme Court's Promulgated Policies, and the Court's Own Letter reiterating the inforcement of Their practiced procedure as related to pro se litigation. [See Exhibits/Letters **E.1** , **E.2** Clarifying, "NO Discovery, NO Records, Transcripts or Any Related Documents to Defendants Conviction will be released from the Court, and Appointed Counsel is discouraged from Copying Defendants..."

Therefore the actions created by the California Supreme Court's Own Promulgated Policies Bar Any Meaningful Access to the Courts. Further Bars Self-Representation of Collateral Challenge/Habeas Corpus to actually Challenge the Validity of Illegal Judgment and Sentence of Death. Pursuant to Filing a Habeas Corpus/Collateral Challenge, The Writ must be supported with evidence/Records to establish a prima facie case. However, The California Supreme Court Bars Any Access to the Records, Transcripts, Evidence, Documents, and only Court Appointed Counsel will be Granted Access to these Records/Evidence AFTER 3 to 6 Years After the Conviction.

The Court by Appointing Counsel for the Direct Appeal Only, and Requesting the Appeals Attorney to Correct the Records and list any potential Habeas Issues in Augmentation and Records Corrections. However, The Direct Appeal Attorney is clearly different from a Habeas Corpus Attorney. Though it is true that some Attorneys can do both, Many limit their scope and professional skills to a specific field of expertise, and are Not Qualified to act in Habeas proceedings.

In Coe v. Thurman, 922 F.2d. at 530:

"The Ninth Circuit has not entertained habeas petitions in which prisoners have claimed that excessive appellate delays have violated their due process rights. If however, we travel east to the Second Circuit, in whose bailiwick are the over-crowded prisons and back-loged calendars of the State of New York, we discover substantial caselaw on delay issues.
The Second Circuit and Federal District Courts in the Southern and Eastern Districts of New York have agreed that when petitioners' federal habeas claims concern delays, to send them back to the State Courts on an Exhaustion Rationale is an inadvisable solution. In fact, "It would be

meanigless to insist that petitioner exhaust his state remedies when the essence of his due process claims arises directly out of his inability to do so". Wheder v. Kelly, 639 F.Supp. 1374 (E.D. NY. 1986), affd. 811 F.2d. 133 (2nd. Cir. 1987). As a result, Those Courts have heard delay claims on the merits. See e.g. Simmons v. Reynolds, 898 F.2d. 865 (2nd. Cir. 1990); Brooks v. Jones, 875 F.2d. 30 (2nd. Cir. 1990); Wheeler; Geams v. Henderson, 725 F.Supp. 681 (E.D. NY. 1989) other Circuits have done the same.

In deciding this issue for the first time in this Circuit, We now hold that since excessive delays in obtaining an appeal may constitute a due process violation, a prisoner need not fully exhaust his state remedies if root of his complaint is his inability to do so. We now assess petitioners claim to see if this particular delay Violated Due Process".

Viewing the Capital Conviction under the POLICIES Created by the States Judicial Branch who is Constitutionally BARRED from "Any Rule Making Authority." [Cal. Const. Art. VI. §6, "California Court's themselves enjoy No such Authority, Reynolds v. Superior Court, 12 Cal.3d. 834, 849 (1974); "The California Supreme Court's Issuance of POLICIES governing the timeliness of Capital Habeas Petitions Violates the strict limitations of Judicial Rule Making that arise from a respect for the separation of Powers, and from the related concerns that Courts cannot properly Sit in Judgment of the Constitutionality of Their Own enactments". Rockwell v. Superior Court, 18 Cal.3d. 420, 455 (1976)].

The California Supreme Court Extended the Appointment of Counsel from (60-days) to (3 to 6 Years). Appointment of Counsel is then Limited for the Direct Appeal, and during this entire delay, Petitioner's are Barred Meaningful Access to the Courts by California Supreme Court's POLICIES Denial of Any and All Legal Records, and A Collateral Challenge/Habeas Corpus.

The First duty of Appointed Counsel is to Correct the Records and Augment a complete historical foundation as to the Full and Complete Legal Process. This is utilized to clarify "All" Records which were utilized in full and complete discovery and chain of evidence. That Certifies Any and All Evidence, Testimony presented before the Court, to insure full and complete Due Process of Law by Statute and Constitution were perfected prior to presentation to the Jury.

The Records Correction and Augmentation should be perfected within 90 days After Appointment of Counsel, with One Extension provided for good cause. To clarify a full and complete Record which is in larger part located with trial Court, Trial Court Clerks, and Appellate Clerks. In California Capital Cases We notice a standard of practice which raises serious questions as to Motive of the Courts by Creation of Delays. Especially in light of Each and Every Capital Case Requires "The Reconstruction of Records", Evidence, Documents to perfect and Augment the Records.

This process with Reconstruction of Records, Files, Evidence, Transcripts requires Appellate Counsel to Create Stipulations. These stiplations often include Search Warrants, Arrest Warrants, Declarations by Investigators, Witnesses Statements, Evidence presented to Court hearing, Side-Bars, Agreements by Courts, Prosecution and Defense Counsel outside the Legal Forum as demanded by Transcripts. Often Trial Courts in California, in Capital Cases demand Prosecution to fill in the Blanks for Appellate Counsel and Stipulate to the Balance.

> "In Offering of proof see Theodore Shove v. State of California, BA27-1293, Cal. Supreme Ct. No. S161909. Sentencing on March 13, 2008, Appointment of Counsel (for the Direct Appeal Only) on January 8, 2013, Transcripts of Hearing in re. Records Corrections and Augmentation, dated Dec. 13, 2013. [Exhibit F.1   ] and Second Hearing Transcripts dated Feb. 25, 2014, [Exhibit F.2   ]. It should be notedEven After Seven Years After Shove's Conviction, The Records are NOT CORRECTED for Any Appeal or Habeas Corpus. Further, the Transcripts provided, Clearly document that the Trial Court Removed Filed Pleadings from the Trial Records, The Judge Perjured Herself before the Court. Further, that the search warrants were Never Validated before the Court, The property was illegally seized and Never Returned to Shove or used as Evidence. The Transcripts as related to Shove's Trial, The ONLY Complete Copy is alleged to be with the Prosecutor. Blocks of pages were removed, and Notices explain "non-existant", "error", "not in the records" in Both the Defense and Trial Courts Copy of Records, But, The Prosecutions Copies are Complete. Further, The Court Clarifies ALL Evidence is Miss-

(See ALSO Exhibit F-3) 33.

ing, the alleged power-point utilized by the Prosecution is Missing.
Further, All Declarations in support of Search Warrants, Arrest Warrants
are Missing as well as All Supporting Evidence, Witness Statements.
  Appointed Counsel has notified Petitioner Shove, She intends to stip-
ulate to Records that are missing, destroyed, altered because it is
Demanded by the State of California Process in Capital Cases".

In Review of Barker Factors:

In analizing delay claims on the merits, Courts have routinely relied on the

Four Factors laid out by Barker v. Wingo, 407 U.S. 514; 92 S.Ct. 2182; 33 L.Ed.2d.

101 (1972). Although the claim in Barker was that a speedy trial, not appeal, was

denied, because the Supreme Court has never enunciated factors to be considered in

weighing appellate delay claims, lower courts have simply trasposed the delayed

trial factors. See e.g. Antoine, 906 F.2d. at 1382; Simmons, 898 F.2d. at 868;

Burkett, 826 F.2d. at 1225. It is important to note that Barker emphasized, "We can-

not definitely say how long is too long in a system where justice is supposed to be

swift but deliberate". Id. at 521, 92 S.Ct. at 2187. In other words, the Court could

"find no constitutional basis for holding that the speedy trial right can be quant-

ified into a specific number of days or months". Id. at 523, 92 S.Ct. at 2188. In-

stead of setting a rigid time limit, the court offered the following four factors

for consideration: "Length of delay, the reason for the delay, the defendant's ass-

ertion of his right, and prejudice to the defendant". Id. at 530, 92 S.Ct. at 2192.

We Now proceed through an examination of those Factors. (And how they apply to this

Case). in re. Coe v. Thurman, 922 F.2d. 528 (9th. Cir. 1990).

Factor 1: "Length of Delay".

In the present case Coe filed his Notice of Appeal on March 5, 1987.
This case was submitted to us three years and eight months later, and
he will have to wait at least a few more months before his state appeal
is ultimately heard. By the time the case is decided, the delay could
easily extend to four years. This length of time is comparable to cases
in which the second Circuit has found due process violations. In Wheeler
over three years elapsed between the appointment of appellate counsel
and his removal and replacement by effective counsel to prosecute the

appeal; In Simmons the lawyer was inactive for five years; in Geames the delay was over three and a half years; Mathis had a six-year delay; and in Elcock v. Henderson, 902 F.2d. 219 (2nd. Cir. 1990), the delay was a staggering eight and a half years.

As mentioned above, however, there is no talismanic number of years or month, after which due process is automatically violated. We can agree that four years is an alarming amount of time; standing alone, however, it does not require a granting of the writ. We must assess the other three Factors as well.

Factor 1-A: The Length of Delay in This Petition.

The Facts clarify "3 to 6 Years" just in the delay in Appointing Counsel for the appeal, and another "1 to 4 Years" in the reconstruction and Correction of the Records. Then, another "1 to 3 Years" before the Actual Opening Brief for Direct Appeal is Filed before the Court. This clarifies "consevatively" at least "5 to 13 Years" to create an opening Brief for a Direct Appeal. Then another "1 to 2 Years" for the State to File their opposing brief, and another "6 months to a Year, or Year and a half" for Reply. Upon the Appeal being fully briefed before the California Supreme Court, it takes another "4 to 7 Years" to be Heard. Hense, the Review Chart provided by the Honorable U.S. Judge Carney in and for the Central District of California, [Exhibit D ]. Establishes 17 to 18 Years to Adjudicate just a Direct Appeal. So now we assess the Other Three Factors.

Factor 2: "Reasons for Delay".

The petitioner, Coe argues that this huge delay was caused by the state's failure to monitor the dilatory court reporter, its failure to locate a missing search warrant, and assigned counsel's refusal to pursue the appeal with sufficient vigor. The state rejoins that the record is incredibly voluminous (several thousand pages), the court reporter was busy with the McMartin preschool molestation case, the defense requested time-consuming arguments, co-appellants have not moved quickly, and the courts are admittedly backlogged.

It is true that here we cannot cite reasons for delay as egregious as the ones noted by the Second Circuit, where appeals have at times proceeded in a feckless and insouciant manner. See, e.g. Wheeler (appointed counsel did nothing for three years); simmons (appointed counsel inactive for five years). Diaz v. Henderson, 905 F.2d. 652 (2nd. Cir. 1990) (appointed counsel failed to perfect appeal for over five years); Brooks (series of appointed counsel delayed eight years). We concede that these cases and the present one di-

verge as to the reasons for delay. In the Second Circuit cases the sources
of delay were the attorneys, whose blatant disregard of their clients re-
sulted in the stalling of the appeals. In Coe's case the culprits are the
court reporter and the police department, whose behavior, while hardly sal-
ubrious, is not comparable to the New York attorneys'.

   All of this notwithstanding, failures of court-appointed counsel and de-
lays by the court are attributable to the state. See Barker, 407 U.S. at 531;
92 S.Ct. at 2192 ("the ultimate responsibility for such circumstances [as
negligence or overcrowded courts] must rest with the government rather than
with the defendant"); Geames, 725 F.Supp. at 685. The government does not con-
test this, but rather claims that the case was always moving forward, albeit
not with notable celerity. While we agree both that, despite nettlesome de-
lays, this case has proceeded slowly along, and that petitioner's own requ-
ests (e.g. for augmentation) have contributed to the snail's pace, we refuse
to condone the otiose progression of this litigation. That the reasons here
are removed from those in the Second Circuit is not a sufficient palliative;
they remain unacceptable.

Factor 2-B: "Reasons for Delay established in This Petition".

The California Supreme Court Promulgated POLICIES which Repeal Statutes and Vio-
late Constitutional Rights. [See Exhibits C.1 through C.4]. Further by Demanding ALL

Appointed Defense Attorneys be Certified through the California Appellate Project,

to Accept the Promulgated Policies Demands created by the California Supreme Court.

The Defense Attorneys AGREE to Accept the Court's terms with Intent to participate

in the Unconstitutional Appellare Review Process. [See Exhibits B.1, State of Cal-

ifornia's Public Defenders Office Response to Exhibits C.1 - C.4; And Exhibit B.2

United States Public Defenders Office Response to Exhibits C.1 - C.4. Clarifying

Acknowledgement,

   The state of California will attempt to claim Courts are overcrowded, Appoint-

ment of Counsel is Backlogged for Capital Cases. This is a Debacle, A Broken System

by State of California and beyond Their abilities to correct. That explanation is

plain and simply a Bold Face "Lie" and "Intentional Misstatement of Facts" pre-

sented to disguise The Truth of this entire situation. If in Review of Exhibits

C.1 - C.4 which was a statistical analysis Created by "Six Professors of Law",

based upon Actual Records. "The Honorable Bird Court" Reversed 92.8% of California's

Capital Cases Alone directly related to Peace Officers, Prosecutors, Trial Judges deliberate Failures in Their sworn Duties. This is Certified by the State of California's Attorney General and Governor creating the "Peace Officers Bill of Rights". <To conceal Bad Acts, Misconduct, Bar Review of Records and Qualifications by the Citizens and Defense, And to cover-up Criminal Misconduct by the Executive Branch>. This Bill was created to corrupt State of California's Judicial Branch, The California Supreme Court in 1987.

After the threats, the California Supreme Court which had maintained a 92.8% Reversal Rate of Capital Cases, basically overnight began Affirming Capital Cases 95% and in some years 100%. This Newly Created Supreme Court was created by the Executive Branch to deceive the Citizens of what a successful and extraordinary performace record their Elected Officials in the Executive, Judicial Branches and Their State Government Agents have perfected. "All of Their Acts were Created in Violation of Both California's and United States Constitutions pursuant to the State's Treaty to enter the Union of the United States."

However, It was the State's Judicial Branch which clarified Their Newly Created Records would be short-lived absent of Creation of Delays, and Complete Control of Defense Attorneys. Hense, Their Creation of Promulgated Policies, where the Califorina Supreme Court Themselves Lack ANY such legislative authority. And Still, this Illegally Promulgated Policies/Appellate Review Process IS ACCEPTED and Supported by the State of California's Executive Branch (The Attorney General, et. al.) as this process is in Their Best interests too. [See Exhibit A , Cal. Supreme Court POLICIES].

The California Supreme Court Bars Collateral Challenge/Habeas Corpus to the Validity of Capital Defendant's Illegal Convictions. Review The Bird Court's 92.8% Reversal Rate clearly establishes a Collateral Challenge/Habeas Corpus would REDUCE Capital Prisoner Population and Backlog in the Courts by at least 75%. This would

clearly relieve both the State's and United States Court's Backlog and Overcrowded Calendars, and the alleged over-burden on Defense Counsel for Capital Appeals. But, it would certainly clarify the Court's present 95% Affirmance Rate would be Destroyed.

Reviewing the Chart [Exhibit D ] provided by the Honorable U.S. District Court Judge Carney. This clarifies "NO Collateral Challenge/Habeas Corpus" Reversals by the California Supreme Court. Further, the minimum time to exhaust State Remedies IS "18 Years to 35 Years"! It should be further noted, That the Senior Circuit Judge Arthur L. Alarcon in and for the Ninth Circuit, the liaison in the Ninth Circuit as related to California's Capital Cases. Has Clarified His background and expertise as a former State of California Prosecutor, State of California Judge, U.S. District Judge, and a present Judge for the Ninth Circuit Court of Appeals. Created a series of Reports with Other Professionals in the Field of Law. Judge Alarcon has admitted the State of California has utilized Their Illegal, Unconstitutional Appellate Review Process to essentially Commit Murder of U.S. Citiznes, by the Denial of Due Process. This Clarifying all of the Delays "were" and "are" deliberately created by the State of California to Deny Due Process of Law. [See Exhibit G. ].

Factor 3: "Defendant's Assertion of His Rights".

> It certainly cannot be gainsaid that Coe has diligently and continuously asserted his rights. He has tenaciously hounded both federal and state courts in pursuit of an appeal.
> The government argues that one step he has not taken is to move to sever his appeal from his co-appellants, thus avoiding the added delays they produce by tardy filings and supplemental motions. While this may be true, the less than punctilious performance of co-appellants has not been a major cause in the delay. All in all, Coe has amply fulfilled this requirement.

Factor 3-C: "Defendant's assertion of His Rights in His Case".

In Order to provide the Authoritative Confirmation We respectfully request this Honorable Court to Review [Exhibits E.1 , E.2 , (letters created by the California Supreme Court which Clarifies NO RECORDS, No Transcripts, Evidence or Any Documents as Related to Defendant's Conviction will be provided to the Defend-

ant. Only Court Appointed and <u>Approved Attorneys</u> can have these documents. And as Their standard of practice DENIES ANY Self-Representation.

The Record will demonstrate Petitioner has sought to obtain Legal Resolution before the California Supreme Court and The U.S. District Court's in California. Our U.S. Court's Jurists who were provided Appointment to the U.S. Judicial Bench by Their exemplary performance in California's Newly Created State Appellate Review Process, as described in <u>Factor 2</u> of this writ. However, Petitioner has sought diligently to obtain Legal Review and Corrections by Challenging California's Unconstitutional Appellate Review Process by Civil Complaints and Habeas Corpus. The U.S. District Court Judges in California's Jurisdiction have Claimed State of California <u>IS EXEMPT From the United States Constitution</u>.

<u>Factor 4</u>: "Prejudice to the Defendant".

> Petitioner initially cites <u>Harris v. Kuhlman</u>, 601 F.Supp. 987, 993 (E.D.N.Y. 1985), for the proposition that where delay between conviction and the hearing of an appeal lasts for longer than 50% of the prisoner's sentence, we can assume prejudice. This holding has since been implicitly overruled in the Second Circuit, see <u>Wheeler</u>, 639 F.Supp. at 1379, affd, 811 F.2d. 133; <u>Geames</u>, 725 F.Supp. at 685, and we do not adopt it here. Denied this easy route, we should again refer to <u>Barker</u>, which listed the following three factors to look at when determining prejudice: 1) oppressive pretrial incarceration; 2) anxiety and concern of the accused; and 3) the possibility that the defense will be impaired. It emphasized that the last is the most significant. <u>Id.</u> 407 U.S. at 532; 92 S.Ct at 2193. These have been slightly altered for appellate delay cases to the following: 1) oppressive incarceration pending appeal; 2) anxiety and concern of the convicted party awaiting the outcome of the appeal; and 3) impairment of the convicted person's grounds for appeal or of the viability of his defense in case of retrial. <u>Antoine</u>, 906 F.2d. at 1382 (using formulation of <u>Rheuark</u>, 628 F.2d. at 303 n. 8).

<u>Factor: 4-D</u> "The Delays Creating Prejudice to Petitioner".

In this current Petition Our Forefathers Created an Authoritative Demand upon "All States within the Union of the United States", "Habeas Corpus/Collateral Challenge <u>SHALL NOT BE SUSPENDED</u>". This is clarified in the parallel provisions of Both The State of California's and United States Constitutions; <u>Cal. Const. Art. I. §11</u>;

U.S. Const. Art. I. §9 cl. 2. See also, Cal. Penal Code §1473, "Person Authorized to prosecute Writ; False Evidence". Clearly by the Suspension there is a Denial of Due Process of Laws as Legislatively PROHIBITED by Both Constitutions parallel provisions in Cal. Const. Art. I. §7(a)(b) and U.S. Const. Fourteenth Amendment. This Suspension also raises to Violations of Both Constitutions parallel provisions Prohibiting Enslavement and Involuntary Servitude, Cal. Const. Art. I. §6 and U.S. Const. Thirteenth Amendment. These Acts Violate the Treaties between the United States and State of California. The State of California is Falsely Imprisoning U.S. Citizens, Absent of due Process of Law.

Reviewing the Facts, the intent by State of California is clear. The Delays and Suspension of Constitutionally Guaranteed Rights creats the Loss and Destruction, Concealment and Alteration of the Records, Transcripts and Evidence which was allegedly presented to the Jury, and specifically to the Court which Demanded a Diligent Review of the Due Process and Chain of Evidence. To Attempt and Allow the Reconstruction of these Records, Transcripts and Evidence absent of Due Process Demands. Clearly Denies any Meaningful Appellate Review Process Legislatively Approved by Constitutional and Statutory Mandates. Any Appellate Review of Any Legal proceedings in the Trial Courts are founded upon the Actual Records. Absent of Records to clarify ALL Due Process was satisfied as Demanded by the Constitution and Statutory Laws, There is NO Valid Conviction.

Reviewing the Facts by clear and thorough Review of California's Records relating to Capital Cases. It is clarified, that each and every Record in Capital Cases in California has to be Certified by some type of Reconstruction of the Records. This is not related to clerical error in transcribing records, or misspellings. Rather they relate to Search Warrants, Execution of the return, timeliness as demanded by Statute. Arrest Warrants with full and complete Declarations, with supporting Statements, Evidence of probable cause which induced the Court (Magistrate)

to issue the Warrants. Further, Our Due Process pursuant to Both State's and United States Constitutions Demands We have the ability to "Confront Witnesses" with Full and Complete Disclosure. Any Officer who participated in any Investigation, Statement Taking, Evidence Collection, Evidence Testing or was at the Crime Scene. All have a Duty to Disclose their Work Records, Complaints as a Matter of Law. Especially in light of the Trial Court's explanation for the Loss of Records in Every Capital Case, This is a standard of practice.

The California Supreme Court "Demands" The Direct Appeal First before Any Consideration of Any Collateral Challenge/Habeas Corpus. This is in spite of Lost/-Destroyed Records and Evidence. This to Affirm the Capital Conviction as Valid, Knowing the Records, Challenge of Lost/Destroyed Records will provide proof to the contrary. It becomes very clear that it is The State of California Who Has by Intentional Violations of U.S. Treaty, U.S. Constitutin and Laws, and the parallel provisions in California's Constitution and Laws Have and Continue to False Imprison United States citizens.

This is once again clarified by California Superem Court's Demand to Control Their Appointed Defense Counsel, and that Counsel are Certified by the California Appellate Project to Accept and Obey the California supreme Court's Policies and Standard of Practice. Thus, The Defense Attorney's enter into AGREEMENTS with the California Supreme Court to Violate their Clients Constitutional Rights. This by allowing the Court to dictate the Defense, Which Issues can be raised, investigated only After the Direct Appeal IS AFFIRMED. It should be noted pursuant to Robbins, 18 Cal.4th. 770-776 (1998); Harris, 5 Cal.4th. at 827, "The Court Demands a Collateral Challenge/Habeas Corpus be Filed as soon as possible or the circumstances of the case allow". The prejudice in determining a timely filed Collateral Challenge/Habeas Corpus is from when the Defendant or His Counsel became Aware of the Issues to be Raised, or should have known. NOT 10 plus Years after Sentencing.

"quoting", <u>Ernest Dewayne Jones v. Kevin Chappell</u>, Case No. CV-09-02158-CJC.

The Honorable U.S. Judge <u>Cormac J. Carney</u> Ruled:
"This Court is extremely troubled by the long delays in execution of sentence in this and other California death penalty cases.".

In claim 27, petitioner contends that his continuous confinement since <u>1995</u> under a death sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment under the principles which Justice stevens articulated in his memorandum "respecting the denial of certiorari" in <u>Lackey v. Texas</u>, 514 U.S. 1045 (1995) (denying petition for writ of certiorari). (Pet., at 414-18). While the death penalty can be justified by "retribution and deterrence of capital crimes by prospective offenders," an execution "cannot be so totally without penological justification that it results in the gratuitous infliction of suffering". <u>Gregg v. Georgia</u>, 428 U.S. 153, 183 (1976) (plurality opinion). Justice White, concurring in <u>Furman v. Georgia</u>, 408 U.S. 238 (1972), opined that:

At the moment that [a proposed execution] ceases realistically to further these purposes [of deterrence and the coherent expression of moral outrage], the emerging question is whether its imposition in such circumstances would violate the Eighth Amendment. It is my view that it would, for its imposition would then be the pointless and needless extinction of life with only marginal contributions to any discernible social or public purposes. A penalty with such negligible returns to the State would be patently excessive and cruel and unusual punishment violative of the Eighth Amendment.
<u>Furman</u>, 408 U.S. at 312 April 10, 2014 (White, J., concurring).

In addition, the State has a strong interest in expeditiously "exercising its sovereign power to enforce the criminal law". In re. <u>Blodgett</u>, 502 U.S. 236, 239 (1992). In this California capital case, this interest has been uterly stymied for two reasons. First, in California, the state and federal procedures for litigating, post-conviction, a capital defendant's Constitutional claims are especially protracted and fraught with delay. See generally, Judge Arthur L. Alarcon and Paula M. Mitchell, <u>Executing the Will of the Voters?: a Roadmap to Mend or End the California Legislature's Multi-billion-dollar Death Penalty Debacle</u>, 44 Loy. L. Rev. 41 (2011); Judge Arthur L. Alarcon, <u>Remedies for California's Death Row Deadlock</u>, 80 S. Cal. L. Rev. 697 (2007).

As we Review the Facts as they exist, A Trial Court has a Demanded Responsibility to <u>insure</u> the Defendant's Rights are protected. It is the Trial Court that insures that all of the Constitution and Statutory Laws are upheld, and that compliance to the Constituion and Laws as they relate to All the Evidence, Testimony,

Transcripts, Reports and Documentation of a <u>Complete Record</u> is maintained by the
Trial Court, Trial clerk and Appellate Clerk until the Entire Record is Certified,
Verified as Complete, True and Accurate. Then, the Record is transferred to the Re-
viewing Appeals Court under seal of the Trial Court, and Certified as True and Com-
plete as received by the Trial Court. This is the only foundation acceptable to al-
lege a Conviction. Absent of a Complete, Correct and Accurate Records, Evidence,
Documents, Reports, Transcripts etc. NO Legal, Legislatively Approved Due Process
exists to establish the Conviction is Valid. Without the strict Demands upon the
Courts relating to The Records. It is impossible for any Constitutional Appellate
Review Process to exist or be perfected to guarantee the Due Process of Laws as
Demanded by the Constitutions' and Statutory Laws.

In this Country, absent of a Criminal Justice System that can establish a <u>Valid</u>
Trial Process, with actual existing accurate records and evidence. Which Clarifies
that All Due Process Guarantees are provided as Demanded by the Constitution and
Laws. Then Reviewed by a Constitutionally Approved Appellate Review Process. How
can we determine whether a Legal Conviction actually exists? It is not possible,
and Due Process is Violated.

However, Until that process is Complete, The Citizen is Not Legally Convicted
of Any Crime, and innocense is established by the Foundation of the United States
Constitution, and the SAME IS TRUE in Any State within the Union of the United
States.

These Facts raise serious questions as depicted by the <u>Chart</u> provided by the
Honorable Judge <u>Carney</u>. [See <u>Exhibit D</u> ]. The State of California's Delays in
processing Capital Defendants post-conviction Motions for Relief in the State Courts
Deprived the Defendant of the "Swift and Imparative Remedies" to which He was Con-
stitutionally entitled, and hense the Federal District Court was Ordered to Con-
sider the Merits of Petitioner's Claims for Federal Habeas Relief. <u>Delancy v. Cold-
well</u>, 741 F.2d. 1246, 1247 (10th. Cir. 1984) (Holding in the context of a §1983

Claim that excessive delay in furnishing a . . .trial transcript to be used upon appeal... can amount to a deprivation of due process) See Harris v. Champion, 938 F.2d. 1062 (10th. Cir. 1991).

In Reviewing Delays, We must review denial of due process Created by the Delays. California has Created Delays to conceal, Loose, and Destroy Trial Court Records and Evidence. Then, These Records are Reconstructed by the Same Trial Court which FAILED to maintain them, this is to include The Trial Court, The Trial Court Clerk and Appellate Clerk. All Who have the responsibilty to Keep/Maintain the Records loose and destroy them. This by a Trial Judge Who Failed to perfect their duties owed to placement upon the bench as a trial judge. And of course, The Prosecutors in many areas Are Relieved about the Loss and Destruction of Records. The Trial Attorney has every opprotunity to ignor participation, but they loose their records as well. Accountability for these abuses have. been presented to the U.S. courts in California Repeatedly.

However, Our U.S. Courts in California have Acknowledged and as Members of the Legal Profession know damages were being perfected by the State of California. Review the Chart provided by the Honorable Carney, "A Minimum of 18 Years to reach the U.S. Courts. However, Many are "35 YEARS plus" and Still "In the State Courts"! Not One Collateral Challenge/Habeas Corpus is Deemed timely by the California Supreme Court. Rather AFTER the Direct Appeal is Affirmed, they will allow a Habeas Corpus-Clemency to Argue the degree of guilt and for Mercy. Cody v. Henderson, 936 F.2d. 715 (2nd. Cir. 1991), Hannor v. Machner, 981 F.2d. 1142 (10th. Cir. 1992).

Based upon ALL Facts, Charts, Admissions and Records of California's Capital Cases. It is very clear the process describe in this petition with all the indisputable supporting evidence. This Process establishes Acts of Treason by the State of California's Government Agents, By Their Violations of Rights of U.S. Citizens. The Intentional False Imprisonment, by Denial of the Constitutionally Approved

Due Process of Law to U.S. Citizens for Financial Gains, by Fraud of the State's and United States Taxes/Subsidies. The Records will also reflect the State of California by and through this Illegal Process, Litigation Costs, Court Costs, Prison Costs, Prosecution Costs are Now "600% Over and above the next Highest State". It should be further acredited to the State of California to have the "**Highest False Conviction Rate**" in All of the United States. This is the cost and burden being placed upon the United States Taxpayers.

Reviewing the California Supreme Court (The Bird Court). Who Reverses "92.8%" of California's Capital Cases; The "U.S. Courts ONLY REVERSED the Bird Court ".02%". Then the New Court was Created, Known as the (Lucas Court) Who Immediately Began then and even up to this present date began "AFFIRMING" All Capital Case Appeals "**95 to 100%**", and Denies Capital Habeas Corpus' "95%". However, Now the U.S. Courts are Reversing the California Supreme court "73.5 to 82%" The Reversals always make references to extreme, abusive, serious, stymied, fraught, grave delays created by California's Courts to Deny Due Process of Law.

At What point have Our U.S. Courts Reversed 73.5 to 82% of Criminal/Capital Cases absent of a Valid Record? Clearly the production of a Complete, Valid legally correct Trial Record in California's Capital Cases, Would most probably Create a 100% Reversal Rate. Until California's Criminal Justice System "Makes the Corrections" to properly Create a legal arrest, legal search warrant, disclosure of law enforcement product performance records, and full and complete accountability to the Constitution and Laws, We will continue to Review a process for Appellate Review, based solely upon Reconstructed Records, Evidence, Documents, Transcripts All Created Artificially to Maintain Illegal Convictions and EXECUTIONS of U.S. Citizens. This Violates each and every foundation of this Country's. Forefathers and ALL who Have and Continue to Fight for Americas Freedoms and Democracy.

## In Conclusion:

The State of California has intentionally, with evil intent and wanton disregard to the United States, Violated All aspects related to the U.S. Constitution and Laws as related to and guaranteed to It's U.S. Citizens. By Their Criminal Acts to False Imprison, Kidnap and place into Involuntary Servitude and Execute for Financial Gains.

This by their denial of Due Process, Constitutional Rights, and by violations of Statutory Laws Created illegal convictions under color of law. Then, Suspended Any Collateral Challenge to the Validity of the illegal, unconstitutional convictions. This to place U.S. Citizens in State Incarceration, and Demand Federal Subsidies for All Prison Costs, Litigation Costs, Prosecution Costs, Court Costs, Peace Officers Costs all by obtaining and maintaining Illegal Convictions. This has been perfected by the State's creation of an Illegal Criminal Justice system, as a Direct Result, they have also over-crowded Our U.S. Courts.

Clearly the State's Illegal Process is perfected by the destruction, concealment and Failure to produce an actual Complete and accurate record in capital cases/ Appeals. The State of California has created a Appellate Review Process based upon the Reconstruction of Alleged Records in Every Capital Case, And Acceptance is Founded upon State Appointing Attorneys Violating their Clients Rights by "stipulating" to the recreation of records, to create False and Untrue Records.

As a Result of the Constitutional deficiencies, violations in All Criminal Capital Cases, California's Habeas Review Process, and the California Supreme Court's Failure to provide Meaningful, post-conviction review, Rights to effective assistance of counsel, Right to Equal Protections, Right to Meaningful Access to the Courts, and Right to be free from Cruel and Unusual Punishments under the Fifth, Sixth, Eighth and Fourteenth Amendments, and "parallel" provisions in California's Constitution. See Furman, 408 U.S. 430.

The described Violations are PROHIBITED by both the United States and State of California's Constitutions, Statutory Laws, and by Treaties with California and The United States. These Acts described Clarify Act of Treason Against the United States. Each of the infractions, violations of the Fifth, Sixth, Eighth and Fourteenth Amendments of United States Constitution, and above stated Treaties and Covenants of International Law. Which are Binding upon the United States Collectively and on States separately, Are Deemed Acts of Treason, By Violations of Treaties, U.S. Constitution by a State Government within the Union of the United States of America.

These Violations are properly brought before This Honorable Court pursuant to 42 U.S.C. §1983, See Blair v. Martel, 645 F.3d. 1151 (9th, Cir. 2011) and Skinner v. Switzer, 131 S.Ct. 1289 (2011). This Unconstitutional Appellate Review Process has to be corrected by Compliance to Constitutional Mandates, and Statutory Laws Before ANY Due Process can be Obtained. The State of California IS AT WAR with the United States Constitution, This by Law and Treaty IS Deemed as Acts of Treason perfected against it's Citizens as a Matter of Law.

## Relief:

The Petitioner prays for this Honorable Court to first Issue Declaratory Relief, by Adjudication that The State of California has with Foresight and Malice Violated the Treaty between The United States and State of California. Further that the State of California's Government Agents have intentionally acted to Violate the Constitutionally Guaranteed Rights of the Petitioner by Violating the Fifth, Sixth, Eighth and Fourteenth Amendments and doing so Under Colot of Authority.

Further that the process described herein this Complaint was Created with intent to Create Delays, to allow the State's Government Agents to Violate the Legal Records to issue a False Conviction. This with intent to False Imprison, Kidnap, and Place U.S. Citizens in Slavery and Involuntary Servitude. The Delays are Un-

constitutionally Created with Intent to perfect and inflict Cruel and Unusual punishments, torture, criminal abuses, Crimes Against Humanity. Further these violations were perfected for financial gains, is Federal Subsidization, Promotions, Advancements, Appointments to Higher Possition in their profession. It should also be noted that pursuant to the Honorable Judge Carney, the Honorable Alarcon's Orders/Reports, Outlines, Charts, Evaluations; These Illegal, Unconstitutional Acts were and are utilized to Deny Constitutionally Approved Due Process with extreme delays while under incarceration directly denying Due Process and in the Commission of Act of Murder of U.S. Citizens. Our Laws Clarify in the process of a Crime <crime is established by State of California's Government Agents deliberately Violating Rights to obtain and maintain Illegal, Unconstitutional Convictions>, Bare the Legal Responsibility for the Actions and "ALL" damages directly related to their Criminal Acts. Petitioner Dennis Harold Lawley was a participant Petitioner in the Complaints Filed in Washington, D.C. Case No. 09-2316-RCL. The Court issued Denial, and Order to Exhaust First. Petitioner Dennis H. Lawley died in 2012 while awaiting Due Process for 22 Years>.

This Court as part of Declaratory Judgment may issue Court Ordered referrals to Both the U.S. Attorney, Homeland Security, U.S. Department of Justice's Solicitor General and International Court where this case's issues at bar are on file. When One who takes an Oath to Obtain Vested Authority and uses Their Vested Power by that Oath to VIOLATE the issuing Power (Sovereignty). This is deemed an Act of Treason by Warring with and Against the Sovereignty and Supreme Authority, In this Case, The Defendants are At War with the United States Constitution, Statutory Laws and Treaties. This with intent to cause Harm, Damages to United States Citizens.

Petitioner would pray for this Honorable Court, Upon issuing Declaratory Adjudication, Will issue Injunctive Orders to Terminate the entire process at issue.

Issuing Orders of Protections to prevent Any further Abuses, Harm, Murders to be perfected by State's Government Agents.

Further Issuing Immediate Protections and Court Ordered <u>Expedited Review</u> as to Damages Created by this Unconstitutional Process. The Issuance of Orders of Protections Against "All State Government Agents at Every Level" of participation as related to retaliatory Acts by Any State Government Agents directed against Petitioner.

This Honorable Court has the Power to Issue Injunctive Relief by Ordering Federal Supervision <Special Masters> to intercede at the Prisons, State Courts, State Investigations at every level of which this Illegal, Unconstitutional Process has had the ability to influence. Further, as this Honorable Court is now <u>Noticed</u>, It's Duties are Invoked to issue Protections to All Citizens this Illegal, Unconstitutional Process has the ability to reach and damage by Injunctive Relief.

Petitioner prays this Honorable Court pursuant to Equitable Relief will Issue Orders of Conformity to the principles of the United States Constitution, Statutory Laws and Treaties of the United States as it applies to "<u>All</u>" Related States within the Union of the United States or within the Jurisdiction of the United States by Treaty. Further to Terminate Any and All, Each and Every aspect in which was created by the State of California's Government Agents to Create this Illegal, Unconstitutional Process. Further to Demand Full and Complete Compliance to the United States as the Supreme Law/Authority as clarified by U.S. Constitution.

To Issue Orders to <u>seize</u> Any and All Related Records, Transcripts, Documents, Evidence as related to Petitioner's alleged participation in California's Criminal Justice System. Further to Issue Orders to <u>REPEAL</u> the "Police Officers Bill of Rights", and Issue Orders of Full and Complete Disclosure pursuant to the Freedom of Information Acts, and Constitutional Mandates, e.g. Brady/Confrontation

Material. This should be extended to ALL Police Officers, Peace Officers, Corr-
ectional Officers, State, County, City Prosecutors and to Any and All Who partic-
ipate in the Criminal Justice System. As a Matter of Law this is a fundamental
right to ensure the Due Process of Law.

The Law prescribes by and through both the Constitution and Statutory Demands
Direct and Complete Acountability in its provisions as related to Due Process of
Law. This is the foundation of which demands the Oath to Obtain Powers and Employ-
ment, and establishes demands unconditionally as to performance and duties, pro-
cedures, rules, policies, to Legislatively Approved Due Process. Violations of
said duties by Any Oath pledger is Contractual Agreement. Both to Duties Owed and
Failure to duties established by Constitution, Laws to it's Citizens. The funda-
mental denial destroys the foundation of the very rights Agents, Oath Takers are
Sworn to protect, Obey and ensure. This Case establishes a pattern of practice
by the State of California's Government Agents Who utilize Vested Authority to
Violate U.S. Citizens Rights, Under Color of Authority possessed by Oath of Off-
ice. The Law prescribes prosecution pursuant to Title 18 U.S.C. §241 and §242 and
for Violations of Criminal Statutes Title 18 U.S.C. §§1503, 1512, 1621, 1623 and
Title 18 U.S.C. §§02, 03 and 04. This is not an isolated incident, But a pattern
of practice, established procedure by One State within the Union to Commit Acts
of Treason Against the Rightful Authority. This for financial gains, by Committing
Crimes Against Humanity, By Murdering, Kidnaping U.S. Citizens and placing them in
Slavery and Involuntary Servitude, and Tortureus Conditions for Years. This Case
and Cause Demands Immediate Corrections, with the maximum punishments prescribed
by law to "All" Violators at Issue. This is to Include Anyone with Vested Power
Who Acknowledged and Failed to perfect Any Type of Corrections. They have effect-
ively Denied Due Process of Law, Equal Protection of Law and Meaningful Access to
the Courts to Commit or Participate in Crimes Against the Citizens of the United

States.

Petitioner is praying for Monetary Relief as to pain and suffering. As well as Damages related to any and all Medical, Physical and Mental Abuses as a direct result related to Acts of Torture at the hands of State of California's Government Agents.

These Damages would further extend to permenent damages as to diminished life span, physical capacity, mental capacity, created by long term acts of tortuous, criminal treatment of which have the abilities to establish permenent damages. Further damages to Petitioner's Family, Relatives, and damages to Petitioner's Character in the Community of which He used to reside. The Years and Years of confinement and criminal abuse at the hands of State of California's Government Agents, Who Acted with evil intent to create extreme damages, solicited Petitioner to commit suiside, and destroyed relationship with family, friends. Further to destroy and breakdown, and or remove Petitioner's physical and mental stability.

Naturally these actual damages would be based upon Actual Medical examination by Specialist as to Medical, Physical, Mental Damages with Recovery time, or it is deemed permenent. This would best be placed before A Jury of U.S. Citizens Who unwillingly were defrauded into paying for these abuses. However, in the best interest of Justice, Petitioner would request compensation in monetary damages in the amount of $10,000.00 (Ten-thousand dollars) a day of False Imprisonment. The false imprisonment can be easily assertained by point of conception of Violations of Constitutional Rights.

Further, Petitioner prays for this Honorable Court to award punitive Damages in the amount of $25,000.00 (Twenty-Five thousand dollars) a day in every aspect with exception of Additional permenent damages as a direct result of Illegal Actions. This would have to be additionally awarded.

The Petitioner prays for All Legal Damages as related to point of conception of

illegal process and Petitioner's abilities to diligently seek legal resolution to present pleadings for Legal Corrections. Further Any and All Court Costs, Correction Costs, Investigation Costs as related to Adjudication and Resolution of this Complaint.

Further for Any Other Damages this Honorable Court deems Fair and Necessary to ensure Full and Complete Compliance with the Constitution, Statutory Laws and Treaties of the United States.

Based upon equitable Damages a Full and Complete Corrections to Appellate Review, Trial Process of State of California as demanded by the Constitution, Laws and Treaties of the United States. And, to Appoint New Counsel so as to allow Petitioner to Seek Habeas Corpus Relief pursuant to 28 U.S.C. §2241(c)(3) as related to Individual Custody issues.

Further, For any Other Relief this Court may Deem Appropriate and Necessary to Aid in the restoration of expedited review and corrections. Petitioner would also pray for the Appointment of Counsel to guide Petitioner in the Resolution in this Case.

I, Jerry G. Frye  declare under the penalty of perjury that all of the foregoing is true and correct to the best of my knowledge pursuant to 28 U.S.C. §1746.

Respectfully submitted this 23 day of July , 2014.

Jerry Brant Frye

Exhibit # 1.

AOB

4/8/96

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Statement of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Arguments:

**IN PROHIBITING JERRY FRYE FROM INTRODUCING EVIDENCE IN MITIGATION OF HIS PRIOR FELONY CONVICTION, THE COURT PRECLUDED A DEFENSE TO THE ONLY AGGRAVATOR SUBMITTED BY THE PEOPLE AT THE PENALTY PHASE AND PREVENTED THE JURY FROM HEARING CRITICAL RELEVANT TESTIMONY IN SUPPORT OF A LIFE VERDICT.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**JERRY FRYE WAS PRECLUDED FROM SUBMITTING REBUTTAL EVIDENCE REGARDING THE ONLY AGGRAVATING FACTOR THE PEOPLE INTRODUCED AT THE PENALTY PHASE, IN CLEAR VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ANALOGOUS PROVISIONS OF THE CALIFORNIA CONSTITUTION.** . . . . . . . . . 40

**THE ENTIRE TRIAL PROCESS WAS SO TAINTED BY INEFFECTIVE ASSISTANCE OF COUNSEL BOTH AT THE GUILT-INNOCENCE TRIAL AND THE PENALTY PHASE AS TO WARRANT A NEW TRIAL.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

**THE FACT THAT RICHARD HAWK WAS ORDERED SUSPENDED FROM THE PRACTICE OF LAW DURING THE PENDENCY OF THIS DEATH PENALTY TRIAL WARRANTS A REVERSAL OF THE CONVICTION AND SENTENCE OF DEATH.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

**AN ORDER ISSUED DURING THE TRIAL OF A CAPITAL CASE MANDATING TRIAL COUNSEL'S SUSPENSION, FOLLOWED BY A STAY OF THE SUSPENSION AT THE REQUEST OF THE PROSECUTOR SEEKING THE EXECUTION OF**

↑ Conflict of Interest ↗

OVER

*These are "Not" harmless Errors!*

COUNSEL'S CLIENT CREATES AN ACTUAL CONFLICT OF INTEREST. AT THE VERY LEAST THERE IS SUCH AN APPEARANCE OF A CONFLICT THAT PUBLIC CONFIDENCE IN THE JUDICIAL SYSTEM WOULD BE SO SHAKEN BY THE APPARENT CONFLICT THAT THE CONVICTION AND SENTENCE CANNOT BE PERMITTED TO STAND. ........................................................... 97

THE JUDGMENT MUST BE REVERSED BECAUSE THE TRIAL COURT WAS ON NOTICE OF A POSSIBLE CONFLICT OF INTEREST, BUT FAILED TO CONDUCT AN INQUIRY INTO THE POSSIBLE CONFLICT OR TO ELICIT A KNOWING AND INTELLIGENT WAIVER OF THE RIGHT TO CONFLICT-FREE REPRESENTATION ........................................................ 107

FORCING JERRY FRYE TO CHOOSE BETWEEN HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND HIS RIGHT TO SPEEDY PRELIMINARY HEARING AND TRIAL VIOLATED HIS DUE PROCESS RIGHTS. ............... 112

INEFFECTIVE ASSISTANCE OF COUNSEL WAS RENDERED REGARDING THE RAISING OF JERRY FRYE'S COMPETENCY TO CONTINUE IN TRIAL. ................................................................. 117

THE TRIAL COURT HAD ENOUGH INFORMATION BEFORE IT AS OF THE APRIL 21 HEARING TO HAVE SUA SPONTE ORDERED AN EVALUATION PURSUANT TO PENAL CODE SECTION 1368. ...................... 122

THE VERDICTS RETURNED IN JERRY FRYE'S CAPITAL TRIAL WERE COMPROMISED BY HIS INCOMPETENCY IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION ................................... 130

REVERSIBLE ERROR WAS COMMITTED WHEN THE COURT REQUIRED THE DEFENDANT TO BE PRESENT AT THE PENALTY PHASE OVER THE DEFENDANT'S PROTESTATIONS THAT HE FEARED HIS EMOTIONAL

STATE WOULD CAUSE AN OUTBURST,
AND THEN DENIED THE CONTINUANCE NEEDED TO PERMIT
THE DEFENDANT TO BE TREATED FOR HIS EMOTIONAL
DISTRESS AND ADJUST TO HIS NEW UNMEDICATED REGIMEN ............ 135

THE FAILURE OF THE TRIAL COURT TO ACCEDE TO THE
COMPETENCY JURY'S REQUEST TO HAVE CERTAIN
TESTIMONY RE-READ TO IT VIOLATED A CALIFORNIA
STATUTE AND APPELLANT FRYE'S RIGHTS UNDER
BOTH STATE AND FEDERAL LAW
............................................................... 148

THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT THE CRIME OF
BURGLARY MAY BE COMMITTED EVEN THOUGH THE ACCUSED WAS
INVITED ONTO THE PREMISES, IN SUBMITTING THE CHARGE OF
BURGLARY TO THE JURY, IN PERMITTING IT TO BE EMPLOYED TO
JUSTIFY A VERDICT OF FIRST-DEGREE MURDER, IN TREATING IT AS A
SPECIAL CIRCUMSTANCE MAKING THE HOMICIDE ELIGIBLE FOR THE
DEATH PENALTY, AND IN INSTRUCTING THE JURY THAT THE
COMMISSION OF BURGLARY COULD BE AN AGGRAVATING
CIRCUMSTANCE, ALL AT A TIME WHEN THE EVIDENCE, TAKEN MOST
FAVORABLY TO THE PROSECUTION, DID NOT ESTABLISH THE
COMMISSION OF A BURGLARY BY DEFENDANT .................... 151

THE COURT ERRED IN FAILING TO GIVE A COMPLETE DEFINITION OF ROBBERY,
IN SUBMITTING THE CHARGE OF ROBBERY TO THE JURY, IN
PERMITTING THE RESULTING ROBBERY CONVICTION TO BE EMPLOYED
TO JUSTIFY A VERDICT OF FIRST DEGREE MURDER, IN TREATING IT AS
A SPECIAL CIRCUMSTANCE MAKING THE HOMICIDE ELIGIBLE FOR THE
DEATH PENALTY, AND IN INSTRUCTING THE JURY THAT THE
COMMISSION OF A ROBBERY COULD BE AN AGGRAVATING
CIRCUMSTANCE, ALL AT A TIME WHEN THE EVIDENCE, TAKEN MOST
FAVORABLY TO THE PROSECUTION, DID NOT ESTABLISH THE
COMMISSION OF A ROBBERY BY DEFENDANT
............................................................... 157

PERVASIVE MISCONDUCT BY THE GOVERNMENT'S ATTORNEYS IN APPELLANT
FRYE'S CAPITAL TRIAL DEPRIVED HIM OF THE RIGHT TO A FAIR AND

RELIABLE DETERMINATION OF HIS GUILT AND SENTENCE AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION . . . . . . . . . . . . . . . 162

OBSTRUCTION OF JUSTICE / DUE ADMINISTRATION OF LAW = UNDER COLOR OF AUTHORITY WITH INTENT TO DENY

THE TRIAL COURT REPEATEDLY CURTAILED THE CROSS EXAMINATION OF CRITICAL PROSECUTION WITNESSES, THEREBY DEPRIVING JERRY FRYE OF HIS RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES AGAINST HIM IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 15 OF THE CALIFORNIA CONSTITUTION.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 177

THE JURY INSTRUCTIONS AT THE GUILT PHASE OF APPELLANT FRYE'S CASE WERE CONSTITUTIONALLY DEFECTIVE
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 185

THE TRIAL COURT ERRED IN FAILING TO ADMINISTER THE STANDARD INSTRUCTION CALJIC 3.11, CONCERNING THE REQUIREMENT THAT THE TESTIMONY OF AN ACCOMPLICE MUST BE CORROBORATED
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 193

CoLLUSioN

THE STATE FAILED TO ADEQUATELY PROCESS THE CRIME SCENE AND THE TRIAL COURT PROHIBITED CROSS-EXAMINATION ON THOSE DEFICIENCIES DENYING APPELLANT FRYE THE ABILITY TO PROPERLY DEFEND HIMSELF
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 203

THE PENALTY PHASE INSTRUCTIONS IN APPELLANT FRYE'S CASE FAILED TO GIVE THE JURY A VEHICLE BY WHICH TO RETURN A LIFE SENTENCE IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 208

THE TRIAL COURT ERRED AT THE PENALTY PHASE BY REFUSING TO COUNTERMAND OR WITHDRAW THE "ANTI-SYMPATHY" INSTRUCTION THAT HAD FORMED A PORTION OF THE GUILT PHASE INSTRUCTIONS.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 214

WHERE AS A MATTER OF STATE LAW VARIOUS SENTENCING FACTORS ARE RELEVANT SOLELY AS POTENTIAL MITIGATORS, THE SENTENCING JURY SHOULD BE SO INFORMED AND SHOULD NOT BE ENCOURAGED OR PERMITTED TO AGGRAVATE THE SENTENCE ON THE BASIS OF SUCH FACTORS
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 217

THE TRIAL COURT IMPROPERLY REFUSED TO GIVE PENALTY INSTRUCTIONS REQUESTED BY THE DEFENSE . . . . . . . . . . . . . 223

THE CALIFORNIA DEATH PENALTY STATUTE FAILS TO NARROW THE CLASS OF OFFENDERS ELIGIBLE FOR THE DEATH PENALTY AND THUS VIOLATES THE EIGHTH AMENDMENT AND ARTICLE I, SECTION 17 OF THE CALIFORNIA CONSTITUTION.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 227

THE FACT THAT A TRANSCRIPT OF THE PROCEEDINGS IS MISSING SHOULD WARRANT A NEW TRIAL.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 252

MANY FEATURES OF THIS STATE'S CAPITAL SENTENCING SCHEME, AS INTERPRETED BY THIS COURT AND APPLIED AT APPELLANT'S TRIAL, VIOLATE THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION . . 255

THE LENGTH OF TIME JERRY FRYE HAS BEEN ON DEATH ROW AWAITING HIS FIRST APPEAL AS A MATTER OF RIGHT HAS BEEN SO EXCESSIVE AS TO

*Lots of ... is* [handwritten]

*AUGMENTATION PRODUCES NEWBLY DISCOVERED EVIDENCE REQUIRING NEW TRIAL ISSUE HEARING* [handwritten]

v

CONSTITUTE TORTURE, AND IS THEREFORE A DEPRIVATION OF HIS
RIGHTS UNDER THE EIGHTH AMENDMENT. . . . . . . . . . . . . . . . . . . . . . 261

TO IMPRISON JERRY FRYE FOR AN INTERMINABLE TERM OF YEARS AND TO THEN
KILL HIM VIOLATES THE DOUBLE PUNISHMENT PROTECTIONS
AFFORDED BY THE DOUBLE JEOPARDY CLAUSE OF THE UNITED STATES
CONSTITUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 277

THE TRIAL COURT ERRED IN INSTRUCTING THE JURY AT THE COMPETENCY PROCEEDING
THAT DEFENDANT FRYE HAD THE BURDEN OF PROVING HIS INCOMPETENCE TO
PROCEED BY A PREPONDERANCE OF THE EVIDENCE
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 280

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 281

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 282

Exhibit #2.

Complete Text of Immunity Agreement Presented to the Jury in
*People v. Frye*, Amador County Superior Court No. 14145
RT 6230-33 with Annotations

The parties to this agreement are the Amador County District Attorney and Jennifer Ann Warsing.

On or about May 14th, 1985, in the County of Amador, State of California, **Jennifer Warsing witnessed the burglary, robbery and killing of Robert Lee Brandt, Sr. and Lucille Jane Brandt by one Jerry Grant Frye.**

**The information available to the District Attorney indicates that Jennifer Warsing was an unwilling participant in the crimes.**

In addition, **the statements given by Jennifer Warsing to the District Attorney also indicate she was an unwilling participant who was coerced into participation under duress and in fear of her life.**

The coercion and fear was created by the conduct of Jerry Grant Frye, who is currently awaiting preliminary hearing for the above-stated crimes in the Amador County Justice Court, Case No. 85-639.

Jennifer Warsing is also a witness to relevant activity on the part of Jerry Grant Frye from the period of May 14th, 1985 to July 6, 1985.

Although **the District Attorney believes Jennifer Warsing was an unwilling participant and thus not an aider and abettor or accessory under the law, reasonable minds may differ when viewing the same factual situation.**

**Jennifer has cooperated with Amador County Sheriff and District Attorney in investigation of the robbery and killing of the Brandts.** She has said the statements she has made are truthful.

**Jennifer Warsing has further agreed to continue to cooperate** with the Amador County Sheriff and District Attorney, including testifying in court concerning this incident.

She has further stated that she will continue to be truthful in her statements.

Therefore, in consideration of Jennifer Warsing's promise to continue to fully cooperate with the Amador County Sheriff and District Attorney in the investigation of the death of Robert Brandt, Sr. and Lucille Brandt, to testify in court and to tell the truth, the Amador County District Attorney agrees that no charges will be filed against Jennifer Warsing concerning the killing of the Brandts; and the District Attorney will seek and obtain a grant of immunity for Jennifer Warsing concerning her testimony in the Frye case, if it becomes necessary upon a finding made by the Court that a grant of immunity is needed to protect Jennifer Warsing while testifying.

The grant of immunity and agreement not to prosecute will cover only the dates and activities mentioned herein. No immunity or promises exist with regard to any charges of perjury, false swearing, contempt or subornation of perjury arising under this agreement or to any crime or crimes not covered by this agreement.

The parties to this agreement have read the same, understand its terms and agree this agreement contains all the terms and **provisions of the** agreement between the parties.

Signed this 15th day of October 1985.

Signed, David S. Richmond, District Attorney; Jennifer Warsing; and Witness, Arthur R. Price, Chief Investigator for the D.A.'s office

---

Contrary to the state court's finding that nothing in the agreement "portrayed the district attorney's office as privy to information bearing on Warsing's veracity that was not admitted at trial," these statements made before the preliminary hearing say Warsing's version of events is true.

The agreement presented the District Attorney's belief in Warsing's truthfulness and his legal opinion about her culpability, an issue that was disputed at trial, and crucial to the jury's decision to sentence Petitioner to death.

Contrary to the state court's finding that the "agreement recites only that Warsing promised to tell the truth," the first substantive sentence said Petitioner was guilty.

The statements by the elected District Attorney, and not merely the trial prosecutor, plainly "place[d] the prestige of [the prosecutor's] office behind a witness by offering the impression that she has taken steps to assure a witness's truthfulness at trial." *Frye*, 18 Cal.4th at 971.

**Legend**

Underlining indicates text quoted by California Supreme Court

**Bold and highlighting** indicates text that in context contradicts the state court's findings

Declaration in Support of

Title 42 U.S.C. § 1983


I, _Jerry G. Faye_____ am the Petitioner in the above entitled case
and can attest to the following facts. Further, this declaration is made in good
faith and is correct to the best of my knowledge.

1.   I was illegally and unconstitutionally convicted of a capital crime and
sentenced to death.

2.   I have been subjected to extreme and abusive delays, which have created
damages to my case records and trial transcripts, documents and evidence related
to my appellate review.

3.   The due process violations of my rights at the trial court proceedings,
resulted in a wrongful conviction and sentence, that I am now barred from
appealing because of the destruction, and concealment of official court records,
that are now preventing me from appealing my unlawful conviction.

4.   The delays perpetrated are intentionally created by state of California's
agents to create physical and mental instability.

5.   I have been physically and psychologically damaged by the criminal abuse of
California's state government agents.

6.   The described process presented in the Statement of Facts, legal arguments
are one in the same, utilized in my case to false imprison and create cruel and
unusual punishment to me personally.

7.   I am a United States citizen, and it is my duty to report this criminal
enterprise, and to seek justice and a resolution to this unconstitutional
process, which is my right as a United States citizen.


I have made these statements and know them to be true and correct to the

best of my knowledge. I stand ready to attest to any and all statements as the court may deem necessary. The foregoing statements are made under penalty of perjury pursuant to 28 U.S.C. § 1746.

DATE: 7-23-2014                           Respectfully Submitted,

Jerry Grant Frye